Todd M. Friedman (SBN 216752)
tfriedman@toddflaw.com
Meghan E. George (SBN 274525)
mgeorge@toddflaw.com
Adrian R. Bacon (SBN 280332)
abacon@toddflaw.com
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
Phone: 323-306-4234
Fax: 866-633-0228

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY HALE individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MANNA PRO PRODUCTS, LLC; DOES 1-10, INCLUSIVE,<br><br>Defendant. | **Case No.: 2:18-cv-00209-KJM-DB**<br><br>**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:   November 22, 2019<br>Time:  10:00 a.m.<br>Place: Courtroom 3<br>        501 I Street<br>        Sacramento, CA  95814 |

Case No. 34-2016-00190874

1

2

# <u>TABLE OF CONTENTS</u>

I.     Introduction .................................................................................. 1

II.    Statement of Facts ........................................................................ 3

   A.  Factual Background ....................................................................... 3

   B.  Statement of Facts ........................................................................ 5

     1.  The Settlement Class .................................................... 5

     2.  Settlement Payment ...................................................... 7

     3.  Monetary Benefit to Class Members and Class Notice ............. 7

     4.  Scope of Release .......................................................... 9

     5.  Opportunity to Opt Out and Object ............................... 9

     6.  Payment of Notice and Administrative Costs .......................... 10

     7.  Class Representative's Application for Incentive Award ........ 10

     8.  Class Counsel's Application for Attorneys' Fees, Costs and Expenses .................................................................... 11

III.    Argument .................................................................................... 11

   C.  The Legal Standards for Preliminary Approval of a Class Action Settlement ................................................................................. 11

   D.  Liability is Highly Contested and Both Sides Face Significant Challenges in Litigating this Case .................................................. 14

   E.  Defendant's Agreement to Finance the Settlement Provides a Fair and Substantial Benefit to the Class .............................................. 15

   F.  The Settlement was Reached as the Result of Arms-Length Negotiation, Without Collusion, with the Assistance of the Mediator 15

   G.  The Settlement Experienced Counsel Have Determined that the Settlement is Appropriate and Fair to the Class ............................. 16

H.   The Court Should Preliminarily Certify the Class for Purposes of Settlement ........................................................................................ 16

I.   The Proposed Class is Numerous. ................................................. 16

J.   The Commonality Requirement is Satisfied, Because Common Questions of Law and Fact Exist. .................................................. 17

K.   The Typicality Requirement is Met. .............................................. 17

L.   The Adequacy Requirement is Satisfied. ...................................... 18

M.   Common Questions Predominate, Sufficient to Certify a Class for Settlement Purposes Only ............................................................. 19

N.   Class Treatment for Settlement Purposes is Superior to Individual Resolutions. ................................................................................... 19

O.   The Proposed Class Notice is Consistent with Ninth Circuit Requirements and Provides Adequate Notice for Claims, Objections and Opt Outs. ................................................................................. 21

P.   The Court Should Appoint Simpluris as the Settlement Administrator 24

Q.   Final Approval Hearing Should be Scheduled .............................. 24

IV.   Conclusion .................................................................................... 24

United States District Court CM/ECF system ....................................... 26

And all counsel and parties of record. .................................................... 26

1

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Woodward*, 521 U.S. 591 (1997) ............................................. 20

*Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) ........ 22

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ................................. 14

Dunleavy v. Nadler (InreMegoFin. Corp. Sec. Litig.), 213 F.3d 454  (9th Cir. 2000) .. 9

*Elkins v. Equitable Life Ins. of Iowa*, 1998 WL 133741 (M.D. Fla. Jan. 27, 1998) .... 20

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ......................... passim

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) ... 17

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995). 12

*Kirkorian v. Borelli*, 695 F.Supp. 446 (N.D. Cal.1988) ............................................. 13

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) ..................... 14

*Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal. May 29, 2012) 22

**Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands,**
**Inc., 244 F.3d 1152 (9th Cir. 2001)** ................................................................... 19, 20

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ........................ 21

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982) ......... 12, 13

*Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp.
364, 372 (E.D. Pa. 1970) ........................................................................................ 13

*Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) 22

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) ......................................................... 21

Stovall-Gusman v. W. W. Granger, Inc., 2015 U.S. Dist. LEXIS 78671 (N.D. Cal.
2015) ......................................................................................................................... 9

*Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688 (M.D. Fla. 2005) ................. 21

*Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ............................. 23

*Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir.
1989) ...................................................................................................................... 12

iii

*Valentino v. Carter-Wallace*, 97 F.3d 1227 (9th Cir. 1996) ........................................20

*Wehner v. Syntex Corp.*, 117 F.R.D. 641 (N.D. Cal. 1987) ........................................18

*West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971) ........................13

*Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) .......16, 18

**Zincser v. Accufix Research Institute, Inc., 253 F.3d 1188 (9th Cir. 2001)** ..........19

**Statutes**

28 U.S.C. § 1715 ..........................................................................2, 7, 10, 24

California Civil Code § 1542 ...............................................................9

Fed. R. Civ. Proc. 23(e)................................................................11

Federal Rule of Civil Procedure 23(b)(3) ...........................................passim

**Other Authorities**

*Manual for Complex Litigation* (Fourth) (Fed. Judicial Center 2004).......................12

*Moore's Federal Practice – Civil* § 23.165[3] (3d ed.) ...............................13

*Newberg on Class Actions* § 11.25 *et seq*., and § 13.64 (4th ed. 2002 and Supp. 2004).
..................................................................................12

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

**MEMORANDUM OF POINTS & AUTHORITIES**

## I. INTRODUCTION

Plaintiff Ashley Hale (hereinafter "Plaintiff", "Hale" or "Class Representative"), individually and on behalf of the "Settlement Class" (as defined below), hereby submits this motion for preliminary approval of a proposed settlement (the "Settlement") of this action (the "Litigation") and of certification of the proposed settlement class. Defendant Manna Pro Products, LLC ("Manna Pro" or "Defendant") does not oppose Plaintiff's motion (Plaintiff and Defendant shall collectively be referred to as the "Parties"). The terms of the Settlement are set forth in the Settlement Agreement and Release (hereinafter the "Agreement").[1] See Declaration of Todd M. Friedman ("Friedman Decl.), ¶ 10, Ex. 1.

The proposed Settlement resulted from the Parties' participation in an all-day mediation session before the Hon. James P. Gray (Ret.) of ADR Services, Inc. and subsequent settlement discussions. The Settlement provides for a substantial financial benefit to the Class Members. The Settlement Class consists of all persons residing in the States of California who purchased one or more units of Select Series Pro Formula Rabbit Food, for which the packaging contained a representation which stated: "Contains No Corn" between January 30, 2014 to May 14, 2019 (the "Class Period"). Agreement at § 2.07. Although it is unclear precisely how many class members there are, it is agreed that Defendant sold 15,367 units nationwide for a gross revenue of $111,926.42 which were labeled as corn free as of May 2019. Plaintiff has conducted, and is continuing to conduct, confirmatory discovery to ascertain the identity of those California individual purchasers, from the retailer information provided by Defendant.

---

[1] Unless otherwise specified, capitalized terms used in this memorandum are intended to have the same meaning ascribed to those terms in the Agreement.

The compromise Settlement reached with the guidance of Judge Gray will create Substantial benefits to the Class Members.  Pursuant to the terms of the Settlement, Defendant will pay for a Settlement Administrator, Simpluris Inc. ("Simpluris"), which will be responsible for providing notice to the Settlement Class, providing notice of this proposed settlement pursuant to and in accordance with 28 U.S.C. § 1715 (the "Class Action Fairness Act" or "CAFA"), providing and disbursing settlement checks to Class Members who submit a claim form and who do not opt-out, creating and maintaining a Settlement Website, maintaining a toll-free telephone number, preparing an Opt-Out List, preparing a list of persons submitting objections to the settlement and acting as a liaison between Class Members and the Parties regarding the settlement.  Settlement members who submit a timely and valid Claim Form and do not opt-out (Qualified Class Members) will receive a pro-rata distribution of the $62,500.00, on a claims made basis.  There shall be no cap on the total number of claims accepted.  Defendant will also agree to separately pay Settlement Costs, Administration Costs and reasonable Attorneys' Fees, in additional to the amounts to be paid to Qualified Class Members.  Consequently, the amount of money that each Qualified Class Member receives will not be affected at all by the payment of Attorney's fees or any Costs.

Pursuant to the Settlement Agreement, Class Counsel will move the Court for an award of attorneys' fees and expenses to be paid by Defendant,  completely separate and apart from the compensation to be paid by Defendant to the Class. Defendant agrees not to oppose an attorney fee request of $125,000.00.

Defendant will pay for the costs of Notice and Administration, as well as the Class Action Fairness Act Notice, which will be sent by the Claims Administrator.  Plaintiff will receive an incentive payment of $7,500.00 (subject to Court approval) for bringing and litigating this action.  In consideration for the Settlement Fund, Plaintiff, on behalf of the proposed Settlement Class (the

"Class"), will seek an entry of judgment, that shall result in the unconditional release and discharge Defendant from all claims relating to the Litigation.

While Plaintiff is confident of a favorable determination on the merits, she has determined that the proposed Settlement provides significant benefits to the Settlement Class and is in the best interests of the Settlement Class. Plaintiff also believes that the Settlement is appropriate because Plaintiff recognizes the expense and amount of time required to continue to pursue the Litigation, as well as the uncertainty, risk, and difficulties of proof inherent in prosecuting such claims. Similarly, as evidenced by the Agreement, Defendant believes that it has substantial and meritorious defenses to Plaintiff's claims, but has determined that it is desirable to settle the Litigation on the terms set forth in the Agreement.

Plaintiff believes that the proposed Settlement satisfies all of the criteria for preliminary approval. Accordingly, Plaintiff moves this Court for an order preliminarily approving the proposed Settlement, provisionally certifying the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) ("Rule 23(b)(3)") for settlement purposes, directing dissemination of Class Notice, and scheduling a Final Approval Hearing.

## II. STATEMENT OF FACTS

### A.   Factual Background

On January 30, 2018, Plaintiff Hale filed a Complaint in the United States District Court for the Central District of California (the "Court") entitled *Ashley Hale v. Manna Pro Products, LLC*, Case No. 2:18-cv-00209-KJM-DB (the "*Hale* Action"). The Original Complaint in the *Hale* Action alleged that Defendant violated the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* (UCL), and the False Advertising Law Cal. Bus. & Prof. Code §§ 17500 *et seq.* (FAL). Thereafter, Plaintiff filed a First Amended Complaint, but did not add any new or different allegations at that time. Thereafter, after Motion

practice, Plaintiff filed a Second Amended Complaint, which is the operating complaint at this time. Friedman Decl. ¶1.

Plaintiff's allegations stem from Defendant's mislabeling of its Select Pro Formula Series rabbit food as being "corn free", when in fact it did contain corn. Plaintiff alleges that she bought multiple bags of these "corn free" labeled rabbit food, only to find that both bags contained a significant amount of corn kernels. Friedman Dec. ¶2. The parties conducted a substantial amount of written discovery prior to the mediation that occurred in this case. Defendant produced a great amount of documents relating to class size, and how many bags were sold labeled as "corn free" during the class period, as well as the identity of the selling retailers and locations. Friedman Dec. ¶3.

The parties attended a mediation in before Hon. James Gray on May 14, 2019. The mediation was successful. My office prepared a mediation brief, complete with exhibits, extensively reviewing the law and the facts, as yielded by the evidence to date. Defendant did the same, and the parties exchanged briefs. Friedman Dec. ¶4. The mediation was a success, and the parties worked out the details of a memorandum of understanding. With Judge Gray's guidance, a Settlement Agreement and Release ("Settlement Agreement") was ultimately agreed upon in principle by the Parties. The long form agreement was prepared thorough an exchange of redlines back and forth. Counsel also cooperated on the content and form of the Class Notice. Friedman Dec. ¶5.

Attached hereto as Exhibit 1 is a true and correct copy of the Settlement Agreement, which also includes attached thereto a copy of the Proposed Final Judgment (Exhibit A), the Proposed Long Form Class Notice (Exhibit B), the Proposed Postcard Notice (Exhibit C2), the Proposed Order Granting Preliminary Approval (Exhibit D), and the Proposed Online Claim Form to be available on the Settlement Website (Exhibit C1). These items were all

- 4 -

negotiated and approved by all Parties, after back and forth discussions between my office and counsel for Defendant. Friedman Dec. ¶6.

Regarding Notice to the Class, Plaintiff has obtained detailed sales records via numerous subpoenas and extensive meet and confer efforts with retailers, which are ongoing. Plaintiff expects the bulk of sales to be produced by Walmart, with whom Plaintiff is continuing meet and confer discussions and working on the entry of a protective order.  This data resulted in receipt of names, addresses, and sales records of thousands of individuals who purchased Class Products, and the parties are culling that information to identify class members, namely, consumers who purchased the Class Products in California. Friedman Decl. ¶7.

Regarding third party discovery, Plaintiff has served two rounds of subpoenas to the following retailers, and is currently engaging in protracted meet and confer efforts in order to gather as much data as possible about the identities of potential class members, as well as sales data on Class Products: Walmart, Ace Hardware, True Value Hardware, Animal Health International, among other smaller retail locations.  Friedman Dec. ¶8. In total, Plaintiff is presently in possession of records with names and addresses for over 2,000 individuals, and has also secured agreements from Walmart to produce Class Contact Data as well, which we anticipate could be another several thousand individuals.  This data will be used to send direct mail notice by postcard to every person identified, i.e. as many Class Members as possible.  Friedman Dec. ¶9.

    **B.**    **Statement of Facts**

        **1.**    **The Settlement Class**

           **a.**    **The Settlement Class**

The "Settlement Class" is defined in the Agreement as follows:

"*All individuals in California who purchased one or more units of Select Series Pro Formula Rabbit Food, for which the packaging contained a representation which stated: "Contains No Corn" between January 30, 2014 to May 14, 2019 (the "Class Period")."* (Agreement at § 2.07).

### b.      Class Membership Determination

The Settlement Class consists of all persons who purchased one or more units of Select Series Pro Formula Rabbit Food which contained the label "Contains No Corn."   Based on data confirmed by Defendant,  Defendant sold 15,367 units nationwide, for a gross revenue of $111,926.42 which were labeled as corn free as of May 2019. Friedman Decl. ¶25. Plaintiff has served and received responsive information from third party retailers, who were identified through Defendant's recordkeeping practices, to produce additional Class data as to identifying information for those class members, namely California individuals who purchased the Class Products. Plaintiff has also sent out additional subpoenas on new retailers identified by the responsive information from the first set of subpoenas, and should be receiving supplemental information within the next 30 days. Freidman Dec. ¶12.  Plaintiff's counsel believes that the maximum class size is approximately 15,367, based on information obtained in discovery, and through Defendant's identification of how many precise units were sold. It is unlikely that all of these units were sold to California consumers. More likely, of those consumers, a smaller percentage will be California residents, and thus, class members.  Plaintiff and Defendant believe that the outstanding subpoenas will provide further identifying class member data.  The data this settlement is based on was confirmed by Plaintiff via discovery, and from Defendant's records, as well as information provided in the context of settlement discussions. Thus, the Plaintiff was able to verify from multiple sources the approximate number of Class Members, through Defendant's recordkeeping practices identifying the number of units sold, and by which retailers.

- 6 -

## 2.     Settlement Payment

Under the Proposed Settlement, Defendant agrees that each person or entity in the Settlement Class who submit a valid claim form (Qualified Class Members), will receive a pro rata share of $62,500.00, on a claims made basis. Friedman Dec. ¶14. Defendant will also agree to separately fund the following: (1) providing notice to Class Members; (2) providing settlement checks to Class Members entitled to receive a settlement check; (3) creating and maintaining the Settlement Website; (4) maintaining a toll-free telephone number; (5) providing CAFA notice (Agreement § 9.04) (6) to pay the proposed $7,500 Incentive Payment to the Plaintiff; and (7) payment of reasonable Attorneys' Fees, and litigation costs, in an amount to be determined by the Honorable Court at Final Approval (Agreement § 6), and not to object to any request up to $125,000.00. *Id.*    Consequently, the amount that each Qualified Class Member receives will not be affected at all by the payment of Attorney's fees or any Costs. *Id.*

## 3.     **Monetary Benefit to Class Members and Class Notice**

The Settlement Agreement provides for a pro rata share of a common fund for cash benefits to each Qualified Class Member.  Plaintiff's counsel anticipates that Notice will be sent via direct mail postcard to the identified California purchasers.  Claims Forms will also be available on the Settlement Website and online Claim Forms.  Agreement § 9.02.

The Claims Period will commence after the entry of the Preliminary Approval Order and this Claims Period will remain open to all Class Members to: submit a Claim by the last date of the "Claim Period", which will be 120 days following entry for the Preliminary Approval Order.  Agreement § 10.02.  Class Members who Opt Out, must postmark before the Objection Deadline, which will be 90 days following entry for the Preliminary Approval Order (Agreement § 7.01); and the deadline to Opt Out and Object will also be 90 days following

entry for the Preliminary Approval Order.  Agreement § 7.01.

The Class Members who file a Claims Form and do not Opt Out and/or Object will each receive a pro-rata share of the settlement fund of $62,500.00 on a claims made basis.  The average retail price for a single bag of Manna Pro Formula Select Rabbit Food is between $15-$17, depending on the retailer.  If every single potential class member made a claim, and received a pro-rata share of the refund, the refund would equate to approximately a 25% refund to Class Members for the purchase of a single bag of rabbit food, due to the mislabeling of the bag.  This represents an outstanding result for the Class when one delves into the actual mislabeling at issue, as well as other mislabeling cases that have settled.

Plaintiff conducted significant amounts of discovery into damages issues, consider multiple sources regarding damages modeling, and also considered arguments raised by Defendant regarding mitigation of damages in formulating an informed opinion regarding a fair settlement value for the Class.   Based on these discussions, Plaintiff's counsel felt even if Plaintiff prevailed at trial, and was awarded judgment, the amount of money awarded to the Class might be relatively low, and the number of people who might benefit from such a judgment would be more limited than the Class which is being settled. Plaintiff's counsel believe that the settlement reached strikes a very fair balance that has the potential of being a higher per person award than the Class would have been awarded at trial after the damages model had been completed and scrutinized by a jury.  Friedman Dec., ¶52.

A similar false advertising lawsuit on behalf of a nationwide class of consumers settled and was granted final approval: *Pappas v. Naked Juice Co. of Glendora, Inc*. Case No. 2:11-cv-8276-JAK-PLA (C.D CA).  There, consumers brought a class action lawsuit against Naked Juice Co. for advertising its products as "All Natural" when in fact synthetic additives were included as ingredients in

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

the product.  Ultimately that case settled for $9 million, with a per class member settlement range of "up to $75 with proof of purchase, or up to $45 without proof of purchase." The Final Approval Order in the Naked Juice class action indicates a class size of 16.5 million, with prices of $2.50 to $7 for Naked Juice products. The case settled for a total of $9 million.  Using a weighted price of $4 per unit, the average proportional refund per product sold represented a 13.85% refund of the product revenue that was returned to the putative class members as a result of the settlement.  See Case No. 2:11-cv-08276-JAK-PLADkt. No. 184.[2]

### 4.   Scope of Release

The scope of the release by all Class Members who do not request exclusion is restricted to any and all claims against the Released Parties arising out of the purchase of Class Products, related to the Plaintiff's Action in this case. Agreement § 16.  While there is a limited release of unknown claims pursuant to California Civil Code § 1542, the language in the Settlement Agreement is clear that it only applies to purchases of Class Products and claims that could have arisen out of this Case.  Agreement § 16.1 and 16.2.

### 5.   Opportunity to Opt Out and Object

As explained before, Class Members who Opt Out, must postmark before the Objection Deadline, which will be 90 days following entry for the Preliminary Approval Order (Agreement § 7.01); and the deadline to Opt Out and Object will also be 90 days following entry for the Preliminary Approval Order.  Agreement § 7.01.  Any Class Member who does not opt out and objects to the proposed settlement must mail his or her objection(s) in writing to the Court. To be

---

[2] See also *Dunleavy v. Nadler (InreMegoFin. Corp. Sec. Litig.),* 213 F.3d 454, 459 (9th Cir. 2000) approving settlement which represented "roughly one-sixth of the potential recovery"); *Stovall-Gusman v. W. W. Granger, Inc.,* 2015 U.S. Dist. LEXIS 78671, at *12 (N.D. Cal. 2015) (granting final approval where "the proposed Total Settlement Amount represents approximately 10% of what class might have been awarded had they succeeded at trial.")

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

considered timely, an Objection must be postmarked on or before the Opt-Out and Objection Deadline specified on the Settlement Website. *Id.* Any Objection must set for the name and case number of this matter, the objecting Class Member's name, address, phone number and all arguments, citations and evidence supporting the objection. *Id.*

### 6. Payment of Notice and Administrative Costs

Once the claims process has ended, Defendant will make a payment of $62,500.00 into an escrow account held by the Settlement Administrator. Defendant  will also separately pay all costs of administration, costs of notice, the Incentive Awards, attorney's fees and costs awarded to Plaintiff's Counsel. Agreement § 5-6.   The Settlement Administrator will use these funds to administer all costs of the settlement, including providing Class Notice, proving CAFA notice, maintaining the website and toll-free number and arranging for payments to Class Members.  (*Id.*).

### 7. Class Representative's Application for Incentive Award

The proposed Settlement contemplates that Class Counsel will request an Incentive Award in the amount of $7,500.00 to be distributed to Plaintiff Ashley Hale subject to Court approval.  Defendant has agreed not to oppose the request. Agreement § 6.02. This amount is exceedingly reasonable for a representative in a class action, and this District, as well as others around the country, have held the same. *See Alvarado v. Nederend*, Civ. No. 1:088-1099 OWW DLB, 2011 WL 90228, at *5 (E.D.Cal. Jan 11, 2011) (finding a $7,500 incentive award to each of five representatives to be reasonable, even where the gross settlement amounted to $505,058.60). See, e.g., *Shaulis v. Falcon Subsidiary LLC*, (2018 WL 4620388) ($7500 award to each of two named Plaintiffs;  *Pliego v. Los Arcos Mexican Restaurants, Inc*., 313 F.R.D. 117, 131 (D. Colo. 2016) ($7,500 award); *In re Janney Montgomery Scott LLC Fin. Consultant Litigation*, 2009 U.S. Dist. LEXIS 60790, 2009 WL 2137224, *12 (E.D. Pa. Jul. 16, 2009)

(approving incentive payments of $20,000 each to three named Plaintiffs) (unpublished); *Bredbenner v. Liberty Travel, Inc*., 2011 U.S. Dist. LEXIS 38663, 2011 WL 1344745, *22-23 (D.N.J. Apr. 8, 2011) (approving incentive payments of $10,000 to eight named plaintiffs; citing 2006 study referenced in 4 Newberg on Class Actions § 11.38, at 11-80, that showed average incentive award to class representatives to be $16,000) (unpublished).

### 8. **Class Counsel's Application for Attorneys' Fees, Costs and Expenses**

The proposed Settlement contemplates that Class Counsel shall be entitled to apply to the Court for an award of reasonable attorneys' fees and costs at Final Approval, not to exceed $125,000.00. Rather, Counsel remain adversarial with respect to negotiating these fees, which were negotiated separate and apart from the settlement amount, demonstrating that there is no collusion whatsoever between Defendant and Plaintiff.

This arrangement was carefully negotiated with the guidance of Judge Gray. The Parties believe this was both the most equitable approach to the Parties, as well as the most ethical way of approaching the award of attorney's fees with respect to fairness for the Class.  Friedman Decl. ¶¶ 36-38; Agreement § 6.01.

### III. ARGUMENT

### C. **The Legal Standards for Preliminary Approval of a Class Action Settlement**

A class action may not be dismissed, compromised or settled without the approval of the court. Fed. R. Civ. Proc. 23(e).  Judicial proceedings under Rule 23 have led to a defined procedure and specific criteria for settlement approval in class action settlements, described in the *Manual for Complex Litigation* (Fourth) (Fed. Judicial Center 2004) ("*Manual*") § 21.63, *et seq*., including preliminary approval, dissemination of notice to class members, and a

fairness hearing. *Manual*, §§ 21.632, 21.633, 21.634. The purpose of the Court's preliminary evaluation of the settlement is to determine whether it is within the "range of reasonableness," and thus whether notice to the class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile. *See* 4 Herbert B. Newberg, *Newberg on Class Actions* § 11.25 *et seq.*, and § 13.64 (4th ed. 2002 and Supp. 2004) ("*Newberg*"). The Court is not required to undertake an in-depth consideration of the relevant factors for final approval. Instead, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Manual*, § 21.632 (4th ed. 2004).

As a matter of public policy, settlement is a strongly favored method for resolving disputes. *See Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). This is especially true in class actions such as this. *See Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982). As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995). To make the preliminary fairness determination, courts may consider several relevant factors, including "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel . . . ." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("*Hanlon*"). Furthermore, courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a

reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027.

Preliminary approval does not require the Court to make a final determination that the settlement is fair, reasonable, and adequate.  Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement.  *See* 5 James Wm. Moore, *Moore's Federal Practice – Civil* § 23.165[3] (3d ed.).  Thus, in considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute, *West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir 1971), and need not engage in a trial on the merits, *Officers for Justice v. Civil Service Comm'n,* 688 F.2d at  625.  Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement . . . may be submitted to members of the prospective class for their acceptance or rejection."  *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).

Preliminary approval of the settlement should be granted if, as here, there are no "reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys." *Manual for Complex Litigation* § 21.632, at 321 (4th ed. 2004).

Furthermore, the opinion of experienced counsel supporting the settlement is entitled to considerable weight.  *See., e.g.*, *Kirkorian v. Borelli*, 695 F.Supp. 446 (N.D. Cal.1988) (opinion of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge[.]"  *See Hanlon*, 150 F.3d at 1026. This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources.  *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted).

Based on these standards, Plaintiff respectfully submits that, for the reasons detailed below, the Court should preliminarily approve the proposed Settlement as fair, reasonable and adequate.

## D.   **Liability is Highly Contested and Both Sides Face Significant Challenges in Litigating this Case**

Defendant has vigorously contested the claims asserted by Plaintiff in this Litigation.   Not only does Defendant challenge Plaintiff's entitlement to damages, but Defendant contests the merits of Plaintiff's claims in their entirety. While both sides strongly believed in the merits of their respective cases, there are risks to both sides in continuing the Litigation.  Friedman Decl. ¶¶ 47-54.  If the Litigation were to continue, challenges would certainly have been made to class certification, as well as the potential for a Motion for Summary Judgment. In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation, against the benefits to the Class.  As a result, Class Counsel supports the Settlement and seek its Preliminary Approval.  Friedman Decl. ¶¶ 47-54. Similarly, Defendant believes that it has strong and meritorious defenses not only to the action as a whole, but also as to the amount of damages sought. However, Defendant recognizes the risks and expense of protracted litigation.

The negotiated Settlement reflects a compromise between avoiding that risk and the risk that the class might not recover.  Because of the costs, risks to

both sides, and delays of continued litigation, the Settlement presents a fair and reasonable alternative to continuing to pursue the Litigation.

**E.   Defendant's Agreement to Finance the Settlement Provides a Fair and Substantial Benefit to the Class**

As set forth above, Defendant has agreed to pay a common fund of $62,500.00, which will be divided in a pro-rata amount to those who make valid claims. Separately and in addition, Defendant will pay all notice and claims administration costs, costs of creating and maintaining a Settlement Website and toll free number, providing CAFA notice, an Incentive Award to Plaintiff in the amount of $7,500, and reasonable attorneys' fees and costs in an amount to be determined by the Honorable Court at the appropriate juncture (not to exceed $125,000.00).  Friedman Decl. ¶ 34.

**F.   The Settlement was Reached as the Result of Arms-Length Negotiation, Without Collusion, with the Assistance of the Mediator**

The proposed Settlement is the result of intensive arms-length negotiation, including an all-day mediation session before the Hon. James Gray on May 14, 2019.  With the guidance of Judge Gray, and working independently of the Court, the Parties were able to reach a proposed resolution of this case.  Friedman Decl. ¶¶ 8-13.  Class Counsel are satisfied that the information provided about the maximum number of Class Members is accurate, as it was authenticated via discovery and record keeping from Defendant. To further obtain class member identification, the parties have engaged (and are continuing to engage) in confirmatory discovery to the third party retailers who were identified by Defendant's record keeping practices. Upon responses from several of those retailers (identifying additional local retailers) additional subpoenas were sent out.  The time and effort spent examining and investigating the claims militate in favor of preliminary approval of the proposed Settlement, as the process strongly

indicates that there was no collusion.  *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair."). (Friedman Decl., ¶12-13).

G.   **The Settlement Experienced Counsel Have Determined that the Settlement is Appropriate and Fair to the Class**

The Parties are represented by counsel experienced in complex class action litigation. Class Counsel has extensive experience in class actions, as well as particular expertise in class actions relating to consumer protection and specifically the CLRA, UCL, and FAL, the claims at issue here.  Friedman Decl. ¶¶ 55-63.  Class Counsel believe that under the circumstances, the proposed Settlement is fair, reasonable and adequate and in the best interests of the Class Members.  Id.

H.   **The Court Should Preliminarily Certify the Class for Purposes of Settlement**

Courts have long acknowledged the propriety of class certification for purposes of a class action settlement. *See In re Wireless Facilities*, 253 F.R.D. at 610 ("Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes"). Certification of a class for settlement purposes requires a determination that certain requirements of Rule 23 are met.  *Id.*  As explained below, class certification is appropriate here because the Proposed Settlement meets the requirements of Rule 23(a) and Rule 23(b)(3) for settlement purposes.

I.   **The Proposed Class is Numerous.**

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be impracticable.  "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d

909, 913-14 (9th Cir. 1964) (citation omitted).  Here, the Settlement Class consists potentially of over 15,000 purchasers of Class Products. Thus, the proposed Class is sufficiently numerous for purposes of certifying a settlement class.

**J.**    **The Commonality Requirement is Satisfied, Because Common Questions of Law and Fact Exist.**

The commonality requirement is met if there are questions of law and fact common to the class. *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent legal factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.").  Here, for purposes of settlement, the proposed Class Members' claims stem from the same factual circumstances, specifically that Defendant allegedly mislabeled its Class Products as being "corn free" when they were not, during the Class Period.

Plaintiff's claims also present questions of law that are common to all members of the Class for settlement purposes, including: (1) whether Defendant willfully or knowingly mislabeled Class Products; (2) whether a reasonable consumer would have found the mislabeling of the bags as "corn free" as material to their purchase of a Class Product; and (3) whether a conjoint survey could provide a reliable damages model for Class-wide relief.  The Settlement Class Members all seek the same remedy.  Under these circumstances, the commonality requirement is satisfied for purposes of certifying a settlement class.  *See Hanlon,* 150 F. 3d at 1019-20.

**K.**    **The Typicality Requirement is Met.**

The typicality requirement is met if the claims of the named representatives are typical of those of the class, though "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  For purposes of settlement, Plaintiffs' claims are typical of the class because they arise from the same factual basis – Plaintiffs purchased Class Products and relied on the advertisement of the products as being

"corn free" in doing so – the same theory of liability as the Class. *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987). The Class Representative claims that her Class Products were falsely advertised. Accordingly, the Class Representative's claims are typical of those of the Settlement Class. Thus, the typicality requirement is satisfied for purposes of certifying a settlement class.

### L.   The Adequacy Requirement is Satisfied.

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must measure the adequacy of representation by two standards: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Wireless Facilities*, 253 F.R.D. at 611 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003)).

The adequacy of representation requirement is met here. For settlement purposes, Class Counsel moves for Plaintiff Ashley Hale to be preliminarily appointed as the Class Representative. Class Counsel requests that Todd M. Friedman of The Law Offices of Todd M. Friedman, P.C. preliminarily be appointed as Class Counsel for purposes of the Settlement.

Plaintiff's counsel has extensive experience sufficient to be appointed as Class Counsel. Plaintiffs understand the obligations of serving as a class representative, has adequately represented the interests of the putative class, and has retained experienced counsel. Plaintiff has no antagonistic or conflicting interests with the Settlement Class, and all members of the Settlement Class are eligible to receive the same benefits. Plaintiff and Class Counsel have no conflicts of interest with other Class Members because, for purposes of the Settlement, Plaintiff's claims are typical of those of other Settlement Class Members. In addition, Plaintiffs and Class Counsel have been prosecuting this

Litigation vigorously on behalf of the Class for the life of this litigation. Plaintiff and Class Members share the common goal of protecting and improving consumer rights, and there is no conflict among them.  Class Counsel have extensive experience in consumer litigation, including the prosecution of class actions under the CLRA, FAL and UCL.  Class Counsel is qualified to represent the interests of the Class. Rule 23(a)(4) is therefore satisfied for purposes of certifying a settlement class.

> ## M.   Common Questions Predominate, Sufficient to Certify a Class for Settlement Purposes Only.

Class certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members." *Fed. R. Civ. P.* 23(b)(3).  The inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir. 2001).  Central to this question is "'the notion that the adjudication of common issues will help achieve judicial economy.'" *Zincser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001) (citation omitted), amended, 273 F. 3d 1266 (9th Cir. 2001).

Here the central inquiry for purposes of the Proposed Settlement is whether Defendant violated the CLRA, UCL, FAL by falsely advertising that Class Products were "corn free" when, as Plaintiff alleges, the products did contain corn.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

> ## N.   Class Treatment for Settlement Purposes is Superior to Individual Resolutions.

- 19 -

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartenders Trust Fund*, 244 F.3d at 1163. *See also, Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

Consideration of the factors listed in Rule 23(b)(3) supports the conclusion that, for purposes of a settlement class, certification is appropriate. Ordinarily, these factors are (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

However, when a court reviews a class action settlement, the fourth factor does not apply. In deciding whether to certify a settlement class action, a district court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods. Inc. v. Woodward*, 521 U.S. 591, 620 (1997). "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious . . . ." *Elkins v. Equitable Life Ins. of Iowa*, No. Civ A96-296-Civ-T-17B, 1998 WL 133741, at *20 (M.D. Fla. Jan. 27, 1998); *see also Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (Rule 23(b)(3)(C) and (D) factors are "'conceptually irrelevant

in the context of settlement'") (citation omitted).  Here, the Rule 23(b)(3)(A), (B) and (C) factors all favor class certification:

- Any Settlement Class Member who wishes to pursue a separate action can opt out of the Settlement.
- The Parties are unaware of any competing litigation regarding claims at issue.
- Plaintiff believes this forum is appropriate, and Defendant does not oppose the forum.

## O.   **The Proposed Class Notice is Consistent with Ninth Circuit Requirements and Provides Adequate Notice for Claims, Objections and Opt Outs.**

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must order the "best notice practicable" under the circumstances. Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).  Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).   "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon*, 150 F.3d at 1025.

Pursuant to Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) also sets forth requirements as to the content of the notice.  The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect

to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).

The Settlement Administrator shall disseminate or arrange for the dissemination of Class Notice via postcard in a form materially consistent with Exhibit C to the Agreement.  The Class Notice here satisfies each of the requirements of Rule 23(c)(2)(B) above.  Further, mailed postcard notice has routinely been held to be adequate notice to a Settlement Class.  *See Schaffer v. Litton Loan Servicing, LP*, CV 05-07673 MMM JCX, 2012 WL 10274679, at *8 (C.D. Cal. Nov. 13, 2012) (approving notice plan where class members were sent postcards that directed them to a settlement website); *Lo v. Oxnard European Motors, LLC*, 11CV1009 JLS MDD, 2012 WL 1932283, at *1 (S.D. Cal. May 29, 2012) (approval of settlement using postcard notice and settlement website).

Plaintiff has secured agreements from third parties to produce more records, pursuant to protective orders, which Plaintiff anticipates will provide the identity of a large percentage of the class members.  For those who for have moved, the Settlement Administrator will identify the new addresses of Class Members, by running the names and addresses through the National Change of Address (NCOA) database.  The Settlement Administrator will send Class Notice to any forwarding addresses that are provided. *See generally Barani v. Wells Fargo Bank, N.A.*, Case No. 12CV2999-GPC KSC, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014).

Further notice will also be provided through the Settlement Website, which will contain the Q & A Notice (Friedman Decl. Ex 1-B to the Agreement), the Claim Form (Friedman Decl. Ex 1-C1), the Settlement Agreement, the Preliminary Approval Order, Plaintiff's fee brief and an online submission for Claims Forms.

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

The notices and settlement documents will be disseminated and posted on the Settlement Website sufficiently prior to the Final Approval Hearing to give Settlement Class Members the opportunity to comment on the Settlement, or to opt out and preserve their rights.  Specifically, Settlement Class Members will have 90 days from the time dissemination of Class Notice has been completed to opt out of the settlement or object. *Cf. Torrisi v. Tucson Electric Power Co*., 8 F.3d 1370, 1374-1375 (9th Cir. 1993) (31 days is more than sufficient, as Class as a whole had notice adequate to flush out whatever objections might reasonably be related to the settlement) (citing *Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir. 1977) (approving timing of notice which was mailed 26 days before the deadline for opting out of the settlement)).  Further, the Settlement Website shall be maintained and accessible to Settlement Class Members during this time and through the conclusion of the settlement proceedings in this case.

This notice program was designed to meaningfully reach the largest number of Settlement Class Members possible.  Since the purchases at issue were made within the past three years, and the parties have additional names and addresses correlating with a significant number of the Settlement Class Members, and the ability to identify Settlement Class Members via the reverse look-up procedure should be high, i.e., mailed postcard notice will likely reach most Settlement Class Members.  The concurrent dissemination of the Long Form Class Notice on the Settlement Website, combined with the Class Notice, satisfies the requirements of due process and constitutes the best notice practicable under the circumstances.  The Settlement Administrator shall prepare and file a declaration prior to the Final Approval Hearing certifying that the notice program has been properly administered in accordance with this Agreement, this Court's Orders, and as described herein.

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

**P.** **The Court Should Appoint Simpluris as the Settlement Administrator**

The proposed Agreement recommends that the Court appoint Simpluris to serve as the Settlement Administrator. Simpluris specializes in providing administrative services in class action litigation, and has extensive experience in administering consumer protection and privacy class action settlements. Defendant does not oppose this request and it was agreed upon as part of the settlement.

**Q.** **Final Approval Hearing Should be Scheduled**

The last step in the settlement approval process is the formal fairness or Final Approval Hearing, at which time the Court will hear all evidence and argument, for and against, the proposed Settlement. Plaintiff requests that the Court grant preliminary approval of the Settlement and schedule a Final Approval Hearing to be held not before 180 days after the date of entry of the Preliminary Approval Order, to allow sufficient time for providing CAFA Notice[3], the toll-free number and the Settlement Website, completion of any outstanding confirmatory discovery, and completion of the period for class members to submit exclusion requests and objections.

**IV.** **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order preliminarily approving the proposed Settlement and certifying a class for settlement purposes.

Date: October 25, 2019                    **The Law Offices of Todd M. Friedman, PC**

---

[3] This CAFA will be served by Simpluris. Confirmation will be submitted to the Honorable Court in advance of the Hearing.

**PLAINTIFF'S MOTION for PRELIMINARY APPROVAL of CLASS ACTION SETTLEMENT and CERTIFICATION of SETTLEMENT CLASS**

By: _/s/ Todd M. Friedman_
Todd M. Friedman
*Attorneys for Plaintiffs*

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

**CERTIFICATE OF SERVICE**

Filed electronically on this 25th day of October, 2019, with:

United States District Court CM/ECF system

Notification sent electronically on this 25th day of October, 2019, to:

Honorable Judge Kimberly Mueller
United States District Court
Eastern District of California

And all counsel and parties of record.

s/Todd M. Friedman
        Todd M. Friedman, Esq.

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND
CERTIFICATION OF SETTLEMENT CLASS**