Todd M. Friedman (SBN 216752)
tfriedman@toddflaw.com
Meghan E. George (SBN 274525)
mgeorge@toddflaw.com
Adrian R. Bacon (SBN 280332)
abacon@toddflaw.com
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
Phone: 323-306-4234
Fax: 866-633-0228

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY HALE individually, and on behalf of other members of the general public similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> MANNA PRO PRODUCTS, LLC; DOES 1-10, INCLUSIVE, <br><br> Defendant. | **Case No.: 2:18-cv-00209-KJM-DB** <br><br> **PLAINTIF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF THE CLASS SETTLEMENT** <br><br> Date:  May 28, 2021 <br> Time:  10:00 a.m. <br> Place: Courtroom 3 <br> 501 I Street <br> Sacramento, CA  95814 |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Monday, May 28, 2021 at 10:00 a.m.., before the United States District Court, Eastern District of California, Courtroom 3, at 501 I Street, Sacramento, CA  95814, Plaintiff Ashley Hale will move this Court for an order granting final approval of the class action settlement and certification of the settlement class as detailed in Plaintiff's Memorandum of Points and Authorities.

1
2
3
4

    This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declarations and exhibits thereto, the Second Amended Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

5
6
7

Date: April 12, 2021

**The Law Offices of Todd M. Friedman, PC**

8
9
10

By: _/s/ Todd M. Friedman_
    Todd M. Friedman
    _Attorneys for Plaintiffs_

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.          **INTRODUCTION**...........................................................................1

II.       **PROCEDURAL HISTORY** ...........................................................2

III.      **SETTLEMENT** ..............................................................................2

    **A.**   **The Fairness Hearing**.................................................3

    **B.**   **Attorneys' Fees, Costs Application, And Service Awards** ........4

    **C.**   **Class Action Settlement Terms** ................................4

       **1.**   **The Class** ........................................................4

       **2.**   **Class Recovery** .............................................4

**V.ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL**...........6

    **A.**   CAFA Notice ...........................................................6

    **B.**   Class Notice ............................................................6

       1.   Direct Mail Notice .............................................6

       2.   Digital Notice.....................................................7

       3.   Print Publication Notice.....................................8

       4.   Detailed Notice Posted on The Settlement Website ..................8

       5.   Toll-Free Information Line...................................8

    **C.**   Claims Procedure, Including Expenses, And Claims Received ......8

       1.   No Objections and No Requests For Exclusion .........................9

       2.   Settlement Checks................................................9

**VI.  THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED…** ...............................................................................9

    **A.**   The Settlement Should Be Finally Approved by the Court............9

1.    The Strength of The Lawsuit and The Risk, Expense, Complexity, and Likely Duration of Further Litigation ...........11

2.    The Amount Offered In Settlement ..........................................13

3.    The Extent of Discovery Completed .......................................15

4.    The Experience and Views of Class Counsel ..........................15

5.    The Reaction of Class Members To The Settlement ................16

6.    The Rule 23(e)(2) considerations favor approval. ...................19

B.    The Notice Program Complied with Rule 23 and Due Process.....20

V.    **CONCLUSION**...........................................................................**22**

# Table of Authorities

**Cases**

." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco,* 688 F.2d 615, 623 (9th Cir. 1982) .......................................................10

*Arthur v. Sallie Mae, Inc*., 10-cv-0198-JLR (W.D. Wash.).....................................14

*Boyd v. Bechtel Corp.,* 485 F. Supp. 610 (N.D. Cal. 1979)....................................15

*Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979)............................15

*Chavez v. PHC Corp*., No. 13-cv-01797-LHK, 2015 WL 581382 (N.D. Cal. Feb. 11, 2015).....................................................................................................21

*Chavez v. PHC Corp*., No. 13-cv-01797-LHK, 2015 WL 581382, at *6 (N.D. Cal. Feb. 11, 2015)......................................................................................21

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) ..............16

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981) ...............................................................................11

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981). .....................................................................11

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ......................................................10

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) ...............................................10

*Hanlon v. Chrysler Corp*., 150 F.3d 1011 (9th Cir. 1998) ...........................3, 10, 11

*Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998). .........................10

*Hanlon*, 150 F.3d at 1027 (9th Cir. 1998)). ..........................................................11

*Hilsley et al v. Ocean Spray Cranberries, Inc., Case No. 3:17-cv-2335-GPC-MDD (S.D. Cal.).* ...............................................................................14

*In re Bluetooth Headset Products Liab. Litig*., 654 F.3d 935 (9th Cir. 2011) ........20

*In re Bluetooth Headset Products Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011) 20

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D.Mich.2003)...................19

*In re Compact Disc Minimum Advertised Price Antitrust Litig*., 370 F.Supp.2d

320 (D.Me.2005) ...................................................................................19

*In re Diamond Foods, Inc.*, 2014 U.S. Dist. LEXIS 3252 (N.D. Cal. Jan. 10, 2014) ...............................................................................................9

*In re Diamond Foods, Inc.*, 2014 U.S. Dist. LEXIS 3252, *9 (N.D. Cal. Jan. 10, 2014) ...............................................................................................9

*In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 1517 (S.D. Cal. Jan. 23, 2012) .........11

*In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 15174, *6 (S.D. Cal. Jan. 23, 2012) .11

*In re Global Crossing Sec. ERISA Litig.*, 225 F.R.D. 436 (E.D. Pa. 2000) ............14

*In re Global Crossing Sec. ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ....14

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ............................14

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ...................14

*In re Mercury Interactive Corp.*, 618 F.3d 988(9th Cir. 2010) ...............................20

*In re New Motor Vehicles Canadian Export Antitrust Litig.*, 2011 WL 1398485 (D. Me. April 13, 2011) .....................................................................19

*In re TJX Cos. Retail Sec. Breach Litig.*, 584 F.Supp.2d 395 (D.Mass.2008) ........19

*In re Warner Communications Sec. Litig.,* 618 F. Supp. 735 (S.D. N.Y. 1985)....11, 15

*In re Warner Communications Sec. Litig.,* 618 F. Supp. 735, 741 (S.D. N.Y. 1985)..................................................................................................11

*In re Warner Communications*, 618 F. Supp. at 745 .............................................15

*In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008)15

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935 (9th Cir. Cal. 2011).......................................................................12

*Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429 (Cal. 2000) ...........................................15

*Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 445 (Cal. 2000) ....................................15

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819 (D. Mass. 1987)...........................................................................................11, 16

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D.

Mass. 1987) ......................................................................................11

*M. Berenson Co*., 671 F. Supp. at 822; *Ellis*, 87 F.R.D. at 18................................16

*Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306 (1950)....................21

*Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). ..........21

*Nat'l Rural Tele. Coop v. DIRECTV, Inc.*, 221 F.R.D 523, 527 (C.D. Cal. 2004...14

*Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)11, 14

*Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004))............................................................................................11

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco,* 688 F.2d 615 (9th Cir. 1982)........................................................10, 13

*Officers for Justice*, 688 F.2d at 624....................................................13

*Officers for Justice*, 688 F.2d at 625....................................................10

*Pappas v. Naked Juice Co. of Glendora, Inc. Case No. 2:11-cv-8276-JAK-PLA (C.D. Cal.)* .................................................................................14

*Pappas v. Naked Juice Co. of Glendora, Inc. Case No. 2:11-cv-8276-JAK-PLA (C.D. Cal.).* ................................................................................14

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ...........................21

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). ..................21

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ......................11

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ................................10

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). ......................10

*Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31, 2014)....................................................................................16

*Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855, *21 (N.D. Cal. Mar. 31, 2014) .................................................................................16

*Stemple*, 2016 U.S. Dist. LEXIS 157207...............................................16

*Strong v. BellSouth Telcoms., Inc.*, 173 F.R.D. 167 (W.D.La.1997) ......................19

*Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370 (9th Cir. 1993) ...........................11

*Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993); .................11

*Wilson v. Airborne, Inc.*, 2008 U.S. Dist. LEXIS 110411 (C.D. Cal. Aug. 13,
   2008)...............................................................................................................22

*Wilson v. Airborne, Inc.*, 2008 U.S. Dist. LEXIS 110411, *13-14 (C.D. Cal. Aug.
   13, 2008)..........................................................................................................22

*Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ........15

**Statutes**

Fed. R. Civ. P. 23 (e)(1)(C). .................................................................................10

Fed. R. Civ. P. 23(e)(1)..........................................................................................21

Fed. R. Civ. P. 23(e)(2)...........................................................................................11

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d
   935, 948 (9th Cir. Cal. 2011)..............................................................................12

the Consumer Legal Remedies Act Cal. Civ. Code§§ 1750 *et seq.*, ........................2

Unfair Competition Law Cal. Business & Professions Code  §§ 17200 et seq.,.......2

Unfair Competition Law Cal. Business & Professions Code  §§ 17500 *et seq.*,.......2

**Other Authorities**

2 *Newberg on Class Actions* (4th Ed. & Supp. 2002) ............................................16

2 *Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); ..............................16

David R. Hodas, *Enforcement of Environmental Law in A Triangular Federal
   System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by
   the United States, the States, and Their Citizens?*, 54 Md. L. Rev. 1552 (1995) ..2

Federal Judicial Center's Judges' Class Action Notice and Claims Process
   Checklist and Plain Language Guide (2010)........................................................21

*Manual for Complex Lit.,* Fourth § 30.42 ...............................................................16

*Manual for Complex Lit.,* Fourth § 30.42. ..............................................................16

## MEMORANDUM OF POINTS & AUTHORITIES

Plaintiff Ashley Hale ("Plaintiff") requests final approval of this proposed class action settlement agreement (the "Settlement Agreement," Dkt. 45-3 Ex 1) with Defendant Manna Pro Products, LLC (the "Defendant").

## I.    INTRODUCTION

This Settlement provides for significant relief for Class Members allegedly harmed by Defendant's false labeling practices.  The Settlement Agreement provides for a substantial financial benefit of pro rata share of $62,500.00, on a claims made basis.  To date, there are 74 Class Members with valid claims. Though the precise number of class members is unknown, Defendant disclosed the total number of units sold, as well as the total number of pounds sold. As will be set forth further in Plaintiff's Motion for Final Approval, it is Class Counsel's counsel estimation that 74 class members indeed represents a large percentage of the class, especially where this particular product is marketed and sold to rabbit breeders who will have purchased a large number of units/pound of feed each, during the class period. Plaintiff estimates the take rate, based on the data it has extrapolated from the Defendant's own records and Plaintiff's experience as a rabbit breeder, to be approximately 32.5%.

This outstanding result for the Class did not come easy.  Plaintiff endured through three years of litigation, challenges to the pleadings, review of a substantial amount of documents, a class mediation, a motion for preliminary approval, substantial third party confirmatory discovery which involved a Motion to Compel in Arkansas District Court, an amendment to the pre-approval order and a new notice plan at considerable expense to class counsel, settlement notice, overseeing administration, and now final approval of the settlement.

The Notice Plan approved by the Court has been implemented successfully by the parties and the Court-approved Settlement Administrator, Simpluris

1  ("Simpluris" or "Settlement Administrator"). The reaction of the Class has been very

2  positive. There are no objections to the settlement. There have been 0 opt outs.  As

3  of April 29, 2021, Simpluris has received 74 total valid claims.  Declaration of Mary

4  Butler ("Butler Decl.") at ¶¶ 21-23.

5  The deadline to submit claims is June 9, 2021.  *Id* at ¶ 21.  Based on the

6  participation rate, participating Class Members can be expected to each receive

7  approximately $844.59/claim based on the claims made. In addition to providing

8  Settlement Class Members with monetary relief, the Settlement incentivizes

9  Defendant and other businesses to comply with the Unfair Competition Law Cal.

10  Business & Professions Code  §§ 17500 *et seq*., the Unfair Competition Law Cal.

11  Business & Professions Code  §§ 17200 et seq., the Consumer Legal Remedies Act

12  Cal. Civ. Code§§ 1750 *et seq.*, which benefits the Settlement Class Members,

13  consumers in general, and compliant competitive businesses. *See* David R. Hodas,

14  *Enforcement of Environmental Law in A Triangular Federal System: Can Three Not*

15  *Be A Crowd When Enforcement Authority Is Shared by the United States, the States,*

16  *and Their Citizens?*, 54 Md. L. Rev. 1552, 1657 (1995) ("[A]llowing a violator to

17  benefit from noncompliance punishes those who have complied by placing them at

18  a competitive disadvantage. This creates a disincentive for compliance.").  The

19  Settlement is abundantly fair and reasonable and should be finally approved.

20  **II.    PROCEDURAL HISTORY**

21  Plaintiff moved for preliminary approval of the Settlement on October 25,

22  2019. (Dkt. No. 45). The Court granted preliminary approval on July 6, 2020 (Dkt.

23  No. 58).  The Court signed an Order Amending the Preliminary Approval plan to

24  approve the new publication notice plan on January 15, 2021 (Dkt. 66). Plaintiffs

25  filed their motion for attorneys' fees and costs and for service awards on April 26,

26  2021 (Dkt. No. 67).  Plaintiff now submits this motion for final approval.

27  **III.    SETTLEMENT**

28  In an earnest attempt to settle the action and avoid the risks inherent in

proceeding to trial, the parties engaged in a mediation with retired Judge James P. Gray (ret.).  As noted by Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class, which was approved by this Court (Dkt. No. 45), the Settlement Agreement in this action resulted from extensive arm's length negotiations, including a full-day mediation session before Hon. Judge James Gray (Ret.).  (Friedman Decl ¶ 9).  The arm's length negotiations, especially those before Judge Gray (Ret.), serve as "independent confirmation" of the reasonableness of the Settlement's terms including the attorneys' fees, costs, and incentive award sought by this Motion.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  The parties also conducted all necessary discovery, including discovery pertaining to the issues of product labeling and corn content, class scope, damages, financial viability, and class certification issues.

Despite strong views about both merits and certification issues from both sides, the parties engaged in settlement negotiations, and during the mediation sessions, were able to reach an understanding with the assistance of Judge Gray, the terms of which are memorialized in the Agreement.  As explained below, all of the factors that courts consider weigh in favor final approval of the proposed Settlement. The relief provided by the settlement is significant, particularly given the risk and expense of continued litigation. The settlement ensures that class members are compensated without delay and eliminates the risk of loss at trial or on appeal.  The parties are fully apprised of the strengths and weaknesses of the claims and defenses. Class Counsel have successfully litigated many false labeling cases and fully support the settlement.  And that no class members objected further supports final approval of the settlement.  Plaintiff requests that the Court finally approve the settlement as fair, reasonable and adequate.

A.    **The Fairness Hearing**

At the Fairness Hearing scheduled for May 28, 2021, the Court will decide

whether to finally approve the Settlement and whether to grant Class Counsel's request for attorneys' fees, actual litigation costs, and service awards to the Class Representative.

**B.    Attorneys' Fees, Costs Application, And Service Awards**

Class Counsel seek $125,000.00 in attorneys' fees and costs and a service award in the amount of $7,500 to the Class Representative Ashley Hale to be distributed separately from the Class Recovery. (Dkt No. 67).

**C.    Class Action Settlement Terms**

The significant terms of the Settlement are as follows:

**1.    <u>The Class</u>**

The "Class" has been certified by this Court (Dkt. No. 58) and is defined the same in the Agreement as follows:

*The "Settlement Class" is defined in the Agreement as follows:*

*"All individuals in California who purchased one or more units of Select Series Pro Formula Rabbit Food, for which the packaging contained a representation which stated: "Contains No Corn" between January 30, 2014 to May 14, 2019 (the "Class Period")." (Agreement at § 2.07).*

**2.    <u>Class Recovery</u>**

Under the Proposed Settlement, Defendant agrees that each person or entity in the Settlement Class who submit a valid claim form (Qualified Class Members), will receive a pro rata share of $62,500.00, on a claims made basis. (Friedman Dec. ¶16). Defendant has also agreed to separately fund the following: (1) providing notice to Class Members; (2) providing settlement checks to Class Members entitled to receive a settlement check; (3) creating and maintaining the Settlement Website; (4) maintaining a toll-free telephone number; (5) providing CAFA notice (Agreement § 9.04) (6) to pay the proposed $7,500 Incentive Payment to the Plaintiff; and (7) payment of reasonable Attorneys' Fees, and litigation costs, in an

1  amount to be determined by the Honorable Court at Final Approval (Agreement §
2  6-Dkt. 45-3, Exhibit 1), and not to object to any request up to $125,000.00. *Id*.
3  Consequently, the amount that each Qualified Class Member receives will not be
4  affected at all by the payment of Attorney's fees or any Costs. *Id*.

5      As of April 29, 2021, Simpluris has received 74 valid claims. (Butler Decl. ¶
6  21). Based on these numbers, it is presently estimated that each Class Member that
7  submitted a valid claim will receive approximately $844.59/claim (a pro rata share
8  of $62,500.00). Simpluris will send the settlement checks via U.S. mail and/or direct
9  deposit after receiving approval from counsel to the Parties that judgment has
10 become final.

11     Class Members shall be advised that the checks must be negotiated within one
12 hundred and eighty (180) days, and after the 180-day period for approved Class
13 Members to cash their check has run, the Settlement Administration shall stop
14 payment on all outstanding checks, and any residual amounts left uncashed shall be
15 distributed to cy pres recipient Public Justice. [1] (Dkt. No. 66). This cy pres
16 distribution of residual settlement funds to the Public Justice Foundation addresses
17 the objectives of California's consumer protection statutes and advances the interests
18 of the plaintiff class by supporting the organization's work on behalf of consumer
19 protection for California consumers. The Public Justice Foundation will use this cy
20 pres award to further the underlying goals of this case, directly and indirectly
21 benefiting the class members and similarly situated persons. In particular, the Public
22 Justice Foundation will use any such award to help advance the rights of California
23 consumers under its consumer protection laws to enforce—and help others
24 enforce—the laws protect consumer rights. (See Declaration of Paul Bland ["Bland

25
26 [1] The Court approved Public Justice as a cy pres recipient contingent upon receiving
   a Declaration from Public Justice certifying that they would use any recipient funds
27 specifically for the purposes and goals of this Action. Plaintiff has filed the
   Declaration of Paul Bland, herewith, declaring under penalty of perjury that is
28 exactly what will be done.

1
2
3

Decl."]¶2. Public Justice assures the Court that  will only spend any cy pres award from this case on protection of consumers from false labeling, mislabeling or false advertising claims. Id. at ¶3.

4

The Class Recovery shall not revert to Defendant.

5
6
7
8
9
10

In addition, and as set forth in the Motion for Preliminary Approval, Defendant has already changed the labeling of their product packaging, as part of the MOU, which was to be completed within six months from the date of the mediation.  From a consumer protection standpoint, Defendant's change of practices will eliminate any false labeling concerns, and therefore protects consumer interests. (Friedman Decl., ¶23).

11
12

## V.    ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL

### A.    CAFA Notice

13
14
15
16
17
18

Simpluris was separately retained by Defendants to administer the notice mandated under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715, to the U.S. Attorney General and to the Attorney Generals of all states and territories where class members reside. Simpluris mailed the notice to these persons on July 31, 2020, in compliance with 28 U.S.C. § 1715(b). (Butler Decl. ¶24).

19

### B.    Class Notice

20
21
22

On July 6, 2020, the Court approved the Notice Plan and appointed Simpluris as the Claims Administrator. (Dkt. No. 58). Subsequently, the class Notice Plan was amended, and the Court approved the amendment. (Dkt. No. 66).

23
24

The class notice consisted of digital notice, direct notice, print notice, and an established settlement website. (Butler Decl. ¶¶ 6-20).

25

1.    Direct Mail Notice

26
27
28

On July 10, 2020, Simpluris received the Court-approved Post Card Notice/Claim form and Long Form Notice ("Notice Packet") from Counsel. The Notice Packet advised Class Members of their right to submit a claim, opt out from

the Settlement, object to the Settlement, or do nothing, and the implications of each such action. The Notice Packet advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class Members could obtain additional information. A true and correct copy of an exemplar Notice is attached hereto as "**Exhibit A**" to the Declaration of Mary Butler (Butler Decl., ¶6).

On July 20, 2020, Counsel for Defendant provided Simpluris with a mailing list containing the name and last known address. The Class List contained data for 28 unique Class Members, to whom mail notice was effectuated. The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. The NCOA contains changes of address filed with the U.S. Postal Service. Of these, only one came back undeliverable. (Butler Decl. ¶ ¶7-10).

2.  Digital Notice

Beginning on February 15, 2021, and continuing, Simpluris caused two online banner ads to run across social media (Facebook and Google) and targeted websites. The first ad has reached 30,250 individuals with 468 link clicks and the second ad reaching 8,717 individuals with 182 link clicks. *Id.* at ¶ 13.   Simpluris also posted the information and url link to the settlement website to the Top Class Actions website, a website that consolidates class action news in a consumer-friendly way. *Id.* at ¶ 14. Rachel Taylor, the leader of the California Rabbit Breeders Group, agreed to post this information about this case on the group's Facebook page. *Id.* at ¶ 15.

In addition, Simpluris contacted the following targeted rabbit breeder groups, providing information on the class settlement, as well as the url to the settlement website: The Humane Society, Petfinder.com, Petfinder Foundation, Friends of Rabbits, Los Angeles Rabbit Foundation. Simpluris also emailed the leaders of 60 different rabbit breeder clubs in California, requesting them to share a url for claims.

3.    Print Publication Notice

In addition to the digital media campaign, Simpluris ran a one page ad in the "Domestic Rabbits" Magazine on March 15, 2021, and another ad will be running on May 15, 2021. (Butler Decl., ¶20).

4.    Detailed Notice Posted on The Settlement Website

Simpluris has also established the Settlement Website MannaProSettlement.com. Visitors to the Settlement Website can download the Long Form Notice, the Claim and exclusion forms, as well as Court Documents, such as the Class Action Complaint, the Settlement Agreement, Motions filed by Class Counsel, and Orders of the Court. *Id.* at ¶11. Visitors are also able to submit claims and exclusion requests electronically, submit documentation and address updates electronically, and to find answers to frequently asked questions (FAQs), important dates and deadlines, and contact information for the Claims Administrator Among other things, the website contains the Settlement Agreement, Preliminary Approval Order, Motion for Attorneys' Fees, detailed Class Notice, Mail Notice, Claim Form and online Opt-Out Form. As of April 29, 2021, the Settlement Website has received 1923 unique visitors and 13,297 page views. *Id.* at ¶ 11.

5.    Toll-Free Information Line

Simpluris also established a case-specific toll-free number for Class Members to call to obtain information regarding the Settlement, and leave inquiry messages. *Id.* at ¶ 4-5. As of April 29, 2021, the toll-free number has received 3 calls. *Id*. Simpluris will continue to maintain the toll-free number throughout the Settlement administration process. *Id*.

**C.    Claims Procedure, Including Expenses, And Claims Received**

The procedure for submitting a claim was made as easy as possible – a claim form could be submitted online via the Settlement Website or sent by U.S. Mail. (Butler Decl. at ¶6, 11, Exhibit A). To date, Simpluris has received 74 valid claim forms from Class Members. *Id*. at ¶ 17.

### 1.    No Objections and No Requests For Exclusion

Class Members were permitted to opt-out[2] or to submit an objection. (Butler Decl., ¶¶ 11, 21-23). The deadline to submit a request for exclusion or object is May 10, 2021. *Id.* As of April 27, 2021, Simpluris has received no requests for exclusion, and there are no objections to the Settlement. *Id.* The fact that there are no objections and no exclusion requests highly supports the adequacy of the proposed Settlement. *In re Diamond Foods, Inc.*, 2014 U.S. Dist. LEXIS 3252, *9 (N.D. Cal. Jan. 10, 2014) ("Also supporting approval is the reaction of class members to the proposed class settlement. After 67,727 notices were sent to potential class members, there have been only 29 requests to opt out of the class and no objection to the settlement or the requested attorney's fees and expenses.")

### 2.    Settlement Checks

Each Class Member that submitted a valid claim will receive a pro rata share of the $62,500.00 settlement fund, estimated approximately $844.59, based on claims made to date. (Friedman Decl., ¶36, 40). The Class Recovery is separate from any amount to be paid for attorneys' fees and costs, incentive award, and settlement administration. Simpluris will send the settlement checks via U.S. mail or direct electronic deposit if the Class member elected to receive such payment, after receiving approval from counsel to the Parties and funding to be received. *Id.*

## VI.    THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED

### A.    The Settlement Should Be Finally Approved by the Court

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court." *Officers for Justice v. Civil*

---

[2] Under Fed. R. Civ. P. 23(e)(4), the Court may afford an additional opportunity for Class Members to request exclusion from the Settlement.

1  *Service Com'n of City and County of San Francisco,* 688 F.2d 615, 623 (9th Cir.

2  1982). "The court may approve a settlement . . . that would bind class members only

3  after a hearing and on finding that the settlement . . . is fair, reasonable, and

4  adequate." Fed. R. Civ. P. 23 (e)(1)(C).  The Court has broad discretion to grant such

5  approval and should do so where the proposed settlement is "fair, adequate,

6  reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d

7  1011, 1026 (9th Cir. 1998).

8        "To determine whether a settlement agreement meets these standards, a

9  district court must consider a number of factors, including: 'the strength of plaintiffs'

10  case; the risk, expense, complexity, and likely duration of further litigation; the risk

11  of maintaining class action status throughout the trial; the amount offered in

12  settlement; the extent of discovery completed, and the stage of the proceedings; the

13  experience and views of counsel; the presence of a governmental participant; and

14  the reaction of the class members to the proposed settlement.'"  *Staton v. Boeing

15  Co.*, 327 F.3d 938, 959 (9th Cir. 2003).  "The relative degree of importance to be

16  attached to any particular factor will depend upon and be dictated by the nature of

17  the claim(s) advanced, the type(s) of relief sought, and the unique facts and

18  circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at

19  625.  The Court must balance against the continuing risks of litigation and the

20  immediacy and certainty of a substantial recovery. *See Girsh v. Jepson*, 521 F.2d

21  153, 157 (3d Cir. 1975); *In re Warner Communications Sec. Litig.,* 618 F. Supp. 735,

22  741 (S.D. N.Y. 1985).

23        The Ninth Circuit has long supported settlements reached by capable

24  opponents in arms' length negotiations. In *Rodriguez v. West Publishing Corp.*, 563

25  F.3d 948 (9th Cir. 2009), the Ninth Circuit expressed the opinion that courts should

26  defer to the "private consensual decision of the [settling] parties." *Id.* at 965 (citing

27  *Hanlon*, 150 F.3d at 1027 (9th Cir. 1998)).  The district court must exercise "sound

28  discretion" in approving a settlement. *See Torrisi v. Tucson Elec. Power Co.,* 8 F.3d

1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981). However, "where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987); *In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 15174, *6 (S.D. Cal. Jan. 23, 2012) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.") (citing *Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

    In addition, under the recent amendments to Rule 23, courts consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

    All of these factors support a finding that the settlement is fair, reasonable, and adequate. Moreover, the Settlement was reached with the assistance of Hon. James P. Gray (Ret.). *See Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 948 (9th Cir. Cal. 2011). Finally, Class Counsel and the Plaintiff agrees that this Settlement is fair and reasonable; among other things, the Settlement will avoid costly and time-consuming additional litigation and the need for trial. (Friedman Decl. at ¶¶ 32-33).

    1.    The Strength of The Lawsuit and The Risk, Expense, Complexity, and Likely Duration of Further Litigation

Plaintiff believes she have a strong case against Defendant but recognizes the significant risks in litigating it to trial. Defendant has vigorously contested the claims asserted by Plaintiffs in this Litigation, which is described in detail in the contemporaneous declaration of Mr. Friedman. (Friedman Decl. ¶¶ 6-8; 50-57). Defendant was expected to raise defenses to the merits of its practices on the basis that the mislabeling was not material, and to contest the certifiability of the action on a dozen different theories. There were expected to be challenges to the appropriate remedy, the appropriate scope, to procedural issues, and whether this should be a case at all.

While both sides strongly believed in the merits of their cases, there are risks to both sides in continuing the Litigation. (Friedman Decl, ¶¶ 50-57. If the Litigation were to continue, challenges would likely be made to certify the action, and challenge it at summary judgment before trial. Moreover, there would be challenges in proving damages. In considering the Settlement, Plaintiffs and Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation, against the benefits to the Class. The Court agreed with this reasoning in preliminarily approving the settlement.

Again, while Plaintiff strongly disagrees with this position, such would have undermined the entire case, if the Court was persuaded by Defendant's position. There are also questions as to damages that are not insignificant – i.e. determining how much consumers were actually harmed by the mislabeling, when most consumers likely placed small value on the added statements on the labels. It is likely that a conjoin survey would have resulted in a small percentage of the purchase price being attributed to this one advertised characteristic, and unlikely that consumers would be legally entitled to a full refund, or even anything approaching half of their purchase price being returned to them as a result of the alleged mislabeling at issue. *Id.* While both sides strongly believed in the merits of their respective cases, there are clearly numerous palpable risks to both sides in

continuing the Litigation. If the Litigation were to continue, challenges would likely be made to any class certification motion made by Plaintiff, thereby placing in doubt whether certification of a class could be obtained and/or maintained in the Litigation. Also, additional substantive challenges to the claims might be raised, including a challenge on summary judgment. The law is fluid in many of these areas, which means that inevitably there would be appeals that would drag out for years. In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation, against the benefits to the Class. As a result, Class Counsel supports the Settlement and seek its Final Approval. *Id.*

Considering the potential risks and expenses associated with continued prosecution of the lawsuit, the probability of appeals by both sides, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation, the proposed settlement is fair, reasonable, and adequate. *See Officers for Justice*, 688 F.2d at 624 ("Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . .")

    2.  <u>The Amount Offered In Settlement</u>

As set forth above, Defendant has agreed to pay $62,500.00 to fund the settlement, as well as separately covering the costs of notice and claims administration, creating and maintaining a Settlement Website and toll free number, providing CAFA notice, an Incentive Award to Plaintiffs in the amount of $7,500 and attorneys' fees in the amount of $125,000.00. (Friedman Decl, ¶40-43). Simpluris has received 74 valid claims, thus the Class Members are expected to receive approximately $844.59 each on average, based on the current number of claims. (Friedman Decl. ¶ 36). Defendant also agreed as a condition of the settlement to revise the package labeling to remove the "no corn" statement. (Friedman Decl. ¶23).

1    This payment is a significant recovery for Class Members. The settlement
2    amount to class members is comparable to numerous similar false advertisement
3    class action settlements which have been approved by courts within the Ninth Circuit
4    and California in particular. *See Pappas v. Naked Juice Co. of Glendora, Inc. Case
5    No. 2:11-cv-8276-JAK-PLA (C.D. Cal.).* (class members were to receive either up
6    to $45 without proof of purchase or up to $75 with proof of purchase per claimant);
7    *Hilsley et al v. Ocean Spray Cranberries, Inc., Case No. 3:17-cv-2335-GPC-MDD*
8    *(S.D. Cal.).* (Class members were to receive $1 per bottle for up to 20 bottles of
9    product). It is well-settled that a proposed settlement may be accepted where the
10   recovery represents a fraction of the maximum potential recovery. *See e.g., Nat'l*
11   *Rural Tele. Coop v. DIRECTV, Inc.*, 221 F.R.D 523, 527 (C.D. Cal. 2004) ("well
12   settled law that a proposed settlement may be acceptable even though it amounts to
13   only a fraction of the potential recovery"); *In re Global Crossing Sec. ERISA Litig.*,
14   225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes
15   a relatively small percentage of the most optimistic estimate does not, in itself, weigh
16   against the settlement; rather, the percentage should be considered in light of
17   strength of the claims"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th
18   Cir. 2000) (approving a settlement that comprised one-sixth of plaintiffs' potential
19   recovery).

20   As the *Linder* Court explained, "… it is firmly established that the benefits of
21   certification are not measured by reference to individual recoveries alone. Not only
22   do class actions offer consumers a means of recovery for modest individual
23   damages, but such actions often produce several salutary by-products, including a
24   therapeutic effect upon those [entities] who indulge in [illegal] practices, aid to
25   legitimate business enterprises by curtailing illegitimate [conduct], and avoidance to
26   the judicial process of the burden of multiple litigation involving identical claims."
27   *Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 445 (Cal. 2000) (internal quotations
28   omitted).

### 3.    The Extent of Discovery Completed

In the present case, Class Counsel performed significant factual investigation prior to bringing the action, conducted extensive written discovery and review of voluminous data from Defendant and third parties, engaged in motion practice and pleadings challenges, and engaged in additional mediation discovery and confirmatory discovery, including motions to compel compliance out of state. (Friedman Decl., ¶7, 13, 15).  The Class Counsel are satisfied that the information provided about the distribution and sales of Class Products is accurate.  The time and effort spent examining and investigating the claims militate in favor of preliminary approval of the proposed Settlement, as the process strongly indicates that there was no collusion.  *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

As detailed in the motion for preliminary settlement approval (Dkt. No. 45), the parties engaged conducted considerable discovery and litigation prior to counsel for the parties attending an all-day private mediation before the Hon. James P. Gray (Ret.).  Thus, the litigation here had reached the stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases." *In re Warner Communications*, 618 F. Supp. at 745.

### 4.    The Experience and Views of Class Counsel

"The recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this action is fully warranted because the settlement is the product of arm's length negotiations conducted by capable, experienced counsel.  *See M. Berenson Co*., 671 F. Supp. at 822; *Ellis*, 87 F.R.D. at 18 ("that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); 2 *Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual for Complex Lit.,* Fourth § 30.42.

It is the considered judgment of Class Counsel experienced in class action litigation that this settlement is a fair, reasonable and an adequate settlement benefiting Settlement Class Members nationwide. Class Counsel are experienced consumer class action lawyers.  This Settlement was negotiated without collusion by experienced and capable Class Counsel who recommend its approval. (Friedman Decl., ¶ 42, 58-66).  Given their experience and expertise, Class Counsel are well-qualified to not only assess the prospects of a case, but also to negotiate a favorable resolution for the class. Class Counsel have achieved such a result here in this class action, and unequivocally assert that the proposed Settlement should receive final approval.

   5.    The Reaction of Class Members To The Settlement

To date, there are 74 claims, there are no objections and only no requests for exclusion (Butler Decl., ¶¶21-23), which is important in evaluating the fairness, reasonableness and adequacy of the settlement and supports approval of the settlement here. *See Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855, *21 (N.D. Cal. Mar. 31, 2014) (only specific objections or comments from 9 class members, and 239 out of the approximately 8 million class members chose to opt out); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) ("Upon considering the high rate of Class Member claims and the relatively low number of requests for exclusion, the Court finds the reaction of the Class to the Settlement favors approval of the Settlement."); *Stemple*, 2016 U.S. Dist. LEXIS 157207 at *7-8 (finding the lack of objections supported approval of the settlement).

In the context of this litigation, Class Counsel was highly successful at achieving a broad class settlement for California consumers (of which Plaintiff was one), through hard fought negotiations leading up to and at mediation.

There are a substantial amount of claims by consumers (74 to date) who make up a large percentage of the class.[3]  While this estimation is imprecise, it is done with knowledge and evidence from both the Plaintiff and her ties to the rabbit breeding community, as well as Defendant's knowledge of its own customer demographics. With rabbit breeders making up the Defendant's typical consumer for this particular product, there is unlikely a single consumer who has only a single rabbit. (Declaration of Dr. Rob McCoy ["McCoy Decl."], ¶6).  Indeed, Plaintiff, who owned between 20 to 100 rabbits at a time (similar to many breeders) went through 2,433 lbs/year. An owner of only five rabbits would likely go through 1/5 this much feed, which amounts to 487 lbs of feed/year. (Declaration of Ashley Hale, Dkt 67-3, ¶11).

Documents produced in formal discovery showed that Defendant sold a total of 15,367 units (bags) in California during the Class Period.  (McCoy Decl., ¶7). Defendant carried multiple other product lines that were not within the Class Definition.  Because 2304 of these units were 50 lb. bags (effectively double bags), the *adjusted total number of units is 17,671, and the total number of lbs. (a more accurate measure) is 441,775 lbs. of feed.  (Friedman Decl., ¶28, McCoy Decl., ¶8).

The Class Definition encompasses the "pro" series but Defendant also sold the gro, sho, sho supplements, and regular bunny food, all of which were separately manufactured and could have been used by many consumers as supplements. Moreover, investigation and discovery showed that there are a small number of competing big brands of rabbit feed in the market, and a number of smaller sellers that do not make up a large segment of the market.  Additionally, Plaintiff provided Class Counsel with information about three mitigating factors.  First, some class members will occasionally switch brands of products, though it is done gradually over time, and not frequently in order to prevent adverse effects such as bloating or

---

[3] The claims period is still open and the number of claimants may increase by the time of Final Approval.

digestive difficulties.  Second, some Class Members became breeders at some point during the Class Period, or stopped as breeders during the Class Period, and may not have purchased Class Products continuously through the entirety of the Class Period. Finally, there are variations amongst breeders throughout the year as to how many rabbits they own at any given time.  During breeding season, Class members would own more rabbits until the offspring were raised to age of being able to be sold to market. Defendant confirmed these phenomena were characteristic of their customer base.  Due to these factors, Class Counsel believe that in estimating the number of unique Class Members, it is appropriate to apply a 1/3 reduction ratio to the expected average feed/Class Member.  Id. ¶ 29-31. (See also Declaration of Ashley Hale, Dkt 67-3).

Based on the information obtained from Defendant, in discovery, and these sources, Class Counsel conservatively estimate that the typical Class Member would have purchased between 1,948 lbs. and 9,732 lbs. of feed, during the class period. If 1/3 of this amount of feed would be comprised of Class Products, on average, then this would equate to a range of 649 lbs. to 3,244 lbs. of Class Product per Class Member, with an average of 1,947 lbs.  Thus, using these conservative figures, the 74 claims to date likely amounts to a take rate of between 10.8% (74 claims * 649 lbs. / 441,775) and 54.3% (74 claims * 3,244 lbs. /441,775), with an average expected take rate of 32.5% of the number of products sold. By all accounts, by extrapolating from the data available to Class Counsel, there is no doubt that there is a high participation rate, and this is a truly excellent result for the class members. *Id.*

Accordingly, with respect to participation, even though the total number of claims appears small, in fact the claims rate represents a much higher percentage than is typical in consumer class actions involving false advertising of low priced goods.  Normally, one would expect to see something in the 3-5% take rate range,

but here, the take rate is estimated to be 32.5%.[4]  No doubt this was a result of the strong efforts of Plaintiff's counsel in subpoenaing the retailers on multiple occasions, and fighting hard with major retailers like Walmart, as well as amending the notice plan to a publication plan to ensure the best notice possible reached the Class in a targeted manner.  The placement of exactly what benefits would be received on the notice itself also no doubt had an effect on this.  Class Members were happy with the result, because the result made sense, and they participated at a high rate, showing that this was an outstanding settlement.

There can be very little argument that the result achieved by this settlement was a strong one.

6.    The Rule 23(e)(2) considerations favor approval.

The considerations outlined in the newly revised Rule 23(e)(2) also support final approval of the settlement.  The first consideration is the adequacy of Plaintiff's and his counsel's representation of the Class. The Court already ruled that Plaintiff and her counsel that competently and adequately represented the Class in the Order granting preliminary approval of the Settlement. (Dkt. No. 22).  Class Counsel, who have a great deal of experience litigating and settling class action cases, also wholeheartedly support the settlement.   This consideration therefore supports

---

[4] *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 526 (E.D.Mich.2003) (finding favorable class reactions in a 6.9% response rate—1800 proofs of claim out of 26,000 notices sent—and a 9% response rate—37,000 proofs of claim out of over 400,000 notices sent); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 2011 WL 1398485 (D. Me. April 13, 2011) (finding favorable class reaction in a 3.9% response rate—438,169 claims out of 11.3 million eligible claimants); *In re TJX Cos. Retail Sec. Breach Litig.*, 584 F.Supp.2d 395, 397, 406 (D.Mass.2008) (approving entire amount of attorneys' fees request after previously approving settlement with response rate of slightly more than 3%); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 370 F.Supp.2d 320, 321 (D.Me.2005) (noting prior approval of settlement that yielded 2% claim rate); *Strong v. BellSouth Telcoms., Inc.*, 173 F.R.D. 167, 169, 172 (W.D.La.1997) (noting prior approval of settlement that yielded 4.3% claim rate).

1    approval.

2    The second consideration also supports approval because the settlement was

3    negotiated at arms' length.  None of the "red flags" of potential collusion the Ninth

4    Circuit has identified exist in this case.  *See In re Bluetooth Headset Products Liab.*

5    *Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (noting that plaintiffs' counsel may have

6    allowed pursuit of their own self-interest to infect settlement negotiations when they

7    receive a disproportionate portion of the settlement, the parties agree to a "clear

8    sailing" arrangement providing for the payment of attorneys' fees separate and apart

9    from class funds, or the parties agree that any fees not awarded will revert to

10    defendants rather than be added to the class fund).  In fact, the fees being requested

11    by Class Counsel as explained in great depth in their Motion for Fees (filed

12    separately) are significantly less than their reasonable lodestar, and thus match the

13    Ninth Circuit benchmark for reasonableness.  (*See* Dkt. No.67)

14    The third consideration — the adequacy of the relief — also supports

15    Settlement.  As discussed above, the estimated $844.59 per Class Members claim is

16    more than adequate to warrant approval, particularly in light of the costs, risks and

17    delay of trial and appeal. The distribution plan ensures that Settlement Class

18    Members will be treated equitably relative to each other. The Class Recovery will

19    be distributed to all Class Members who filed valid claims.  Further, as outlined

20    above, the injunctive relief obtained by Plaintiff provides substantial benefits to the

21    Class as well.

22    Finally, Plaintiff addresses the reasonableness of the requested attorneys' fees

23    in the previously filed Motion for Fees. (Dkt. No. 67).

24    **B.    The Notice Program Complied with Rule 23 and Due Process**

25    The notice program approved by the Court and implemented by Simpluris

26    satisfied the requirements of Rule 23 and due process. Rule 23 provides that "[t]he

27    court must direct notice in a reasonable manner to all class members who would be

28

1  bound by the proposal." Fed. R. Civ. P. 23(e)(1). When the class is certified under

2  Rule 23(b)(3), the notice must also be the "best notice practicable under the

3  circumstances, including individual notice to all members who can be identified

4  through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). To comply with

5  constitutional due process standards, the notice must be "reasonably calculated,

6  under all the circumstances, to apprise interested parties of the pendency of the

7  action and afford them an opportunity to present their objections." *Mullane v.*

8  *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

9      The court-approved notice was "reasonably calculated, under all

10  circumstances, to apprise interested parties of the pendency of the action and afford

11  them an opportunity to present their objections" and described "the action and the

12  plaintiffs' rights in it." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

13  The notice was written in plain English and included the dates for class members to

14  object and the final approval hearing. *See Chavez v. PHC Corp.*, No. 13-cv-01797-

15  LHK, 2015 WL 581382, at *6 (N.D. Cal. Feb. 11, 2015) ("Notice is satisfactory if

16  it 'generally describes the terms of the settlement in sufficient detail to alert those

17  with adverse viewpoints to investigate and to come forward and be heard.'" (citation

18  omitted)).

19      In total, the Notice Plan delivered 170 million online and social impressions

20  across all digital media platforms. (Butler Decl., ¶19). By using a multi-media

21  channel approach in providing notice, (which employs direct notice, print, digital,

22  and social and mobile media), an estimated 70-90 percent of targeted Class Members

23  were reached with an average frequency of approximately 4 times. (Butler Decl.

24  ¶18). These numbers satisfy due process. *See* Federal Judicial Center's Judges'

25  Class Action Notice and Claims Process Checklist and Plain Language Guide, at p.

26  3 (2010) (recognizing that a reach of between 70-95% is reasonable); *see also,*

27  *Wilson v. Airborne, Inc.*, 2008 U.S. Dist. LEXIS 110411, *13-14 (C.D. Cal. Aug.

28  13, 2008) (court granted final approval of settlement where measurements used to

estimate notice reach suggested that 80% of adults learned of the settlement).

Simpluris also established a settlement website with detailed information about the settlement. (Butler Decl., ¶ 11). Located at www.MannaProSettlement.com, the website had 1923 unique visitors and 13,297 page views as of April 29, 2021. *Id*. at ¶ 11. The website lists important dates and class members' rights and options, includes frequently asked questions and key documents from the case like the settlement agreement and motion for attorneys' fees, and allowed class members to submit an online claim. The website (and notices) also provided a toll-free number that class members could call to obtain information about the Settlement, speak to a live customer service representative during business hours, and leave inquiry messages during non-business hours. *Id.* at ¶¶ 4-5, 7. As of April 29, 2021, 3 Class Members had called the toll free number. *Id.*

## V.    CONCLUSION

In sum, the parties have reached this Settlement following extensive arms' length negotiations, with the assistance of an experienced mediator. The Settlement is fair and reasonable to the Class Members who were afforded notice that complies with due process. For the foregoing reasons, Plaintiff respectfully requests the Court:

- Grant final approval of the proposed class action settlement;
- Order payment from the settlement proceeds in compliance with the Court's Preliminary Approval Order and the Settlement Agreement;
- Grant the Motion for Attorneys' Fees and Costs and Service Award;
- Enter the proposed order of Final Approval of Class Action Settlement and Judgment; and,
- Retain continuing jurisdiction over the implementation, interpretation, administration and consummation of the Settlement.

Date: April 27, 2021                    **The Law Offices of Todd M. Friedman, PC**

                                        By: _/s/ Todd M. Friedman_
                                            Todd M. Friedman
                                            *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

1

2    Filed electronically on this 30th day of April, 2021, with:

3
United States District Court CM/ECF system
4

Notification sent electronically on this 30th day of April, 2021, to:
5

6    Honorable Judge Kimberly Mueller
United States District Court
7    Eastern District of California

8
And All Counsel of Record as Recorded On The Electronic Service List
9

10

11    <u>s/Todd M. Friedman</u>
Todd M. Friedman, Esq.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**