UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ashley Hale individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Manna Pro Products, LLC,<br><br>Defendant. | No. 2:18-cv-00209-KJM-DB<br><br><br>ORDER |

This matter is before the court on two unopposed motions by plaintiff Ashley Hale. The first seeks an award of attorneys' fees and costs and payment of an incentive award to Ms. Hale, Mot. Att'ys' Fees, ECF. No. 67; Mem. Att'ys' Fees, ECF No. 67-1. The second is for final approval of the parties' class action settlement. Mot. Final Approval, ECF No. 68. As explained below, the court **grants** both motions.

**I.    BACKGROUND**

Ms. Hale, a rabbit breeder, bought "Manna Pro Select Series Pro Formula Premium Rabbit Feed" (the feed mix). Second Am. Compl. (SAC) ¶¶ 17, 19, ECF No. 23. The bag was labeled with the following: "Contains No Corn: Helps Reduce The Risk of Digestive Disorders." The list of ingredients on the bag did not include corn. *Id.* ¶ 16. After purchasing the bag,

Ms. Hale found the feed mix had traces of corn. *Id*. ¶ 20. She then purchased additional bags and found those bags also contained corn. *Id*. ¶¶ 22–23.

Ms. Hale alleges she would not have purchased the feed mix had she known there was corn because corn can be harmful to rabbits. *Id.* ¶¶ 17, 30. Corn "can increase the risk of a toxic mold, which mimics rabies and can cause death" and also can "caus[e] [rabbits] to put on 'bad' fat[ ] and have increased health issues." *Id.* ¶ 17. She argues defendant's labeling practice is deceptive in that it allows defendant to profit because it can charge $17.99 per bag for its purportedly corn-free feed mix, while competitors charge about $10 to $12 per bag for mixes not labeled as corn-free. *Id.* ¶ 28.

On January 30, 2018, Ms. Hale filed this action, Compl., ECF No. 1, and defendants moved to dismiss, ECF No. 5. Ms. Hale amended the complaint, First. Am. Compl., ECF No. 12, and the court denied the motion to dismiss as moot, Min. Order, ECF No. 19. Shortly thereafter, the parties stipulated to plaintiff's filing another amended complaint. Stipulation (Aug. 24, 2018), ECF No. 21. The operative second amended complaint makes three claims against defendant on behalf of the class: (1) unfair and unlawful business practices in violation of California's unfair competition law (UCL), Cal. Bus. & Prof. Code § 17200, et seq., (2) fraudulent business practices in violation of the UCL, and (3) violation of California's false advertising law (FAL), Cal. Bus. & Prof. Code § 17500, et seq. SAC ¶¶ 56–94.

After "a substantial amount of written discovery," the parties participated in a full day of mediation before the retired Honorable James P. Gray. Mot. for Prelim. Approval at 4, ECF No. 45. Mediation resulted in a settlement and plaintiff then moved for preliminary approval, *Id.* at 1, which the court granted, Prev. Order (July 6, 2020), ECF No. 58.

Under the settlement, the defendant will pay $62,500 "on a claims made basis to Class Members, with each Class Member who makes a claim receiving a pro rata share of the amount." Settlement Agreement § 5.01, Friedman Decl. Ex. 1, ECF No. 45-3. The defendant has agreed to pay class counsel's attorneys' fees, litigation and administration costs, and an incentive award to the class representative. *Id*. §§ 6.01–6.02, 8.02. The amount of these payments will not be deducted from the class fund. *Id.* The defendant also agrees to revise the package labeling and

advertising of the feed mix so it is no longer advertised as corn-free. Mot. Final Approval at 13; Friedman Decl. ¶ 23, ECF No. 68-1. The court approved the following class:

> all individuals in California who purchased one or more units of Select Series Pro Formula Rabbit Food, for which the packaging contained a representation which stated: "Contains No Corn" between January 30, 2014 to May 14, 2019 (the "Class Period"). Excluded from the Class are any employees of Defendant, its parents, affiliates, or subsidiaries; the Judge or Magistrate Judge to whom the Action is assigned; and, any member of those Judges' staffs or immediate families.

Settlement Agreement § 2.07. At the time of preliminary approval, the parties estimated the class would "consist of approximately 1,583 individuals whose contact information is known and ascertainable." Prev. Order (July 6, 2020) at 12 (citing Supp. Friedman Decl. ¶¶ 7–12, ECF No. 54).

The court granted preliminary approval subject to the parties' resolving several issues prior to final approval. First, the court "require[d] greater detail on the question of predominance at the final approval stage." *Id.* at 10. Second, the court required further justification for the $125,000 attorneys' fees and directed parties to file support showing "the negotiated fee reasonably compensates class counsel." *Id.* at 20–21. Finally, the court noted further support was needed for the proposed incentive award of $7,500 to Ms. Hale. *Id.* at 21.

Originally class counsel planned to fulfill notice requirements by mailing notice directly to California purchasers that could be identified from records of retailers, such as Walmart, who sold the feed. Mot. for Prelim. Approval at 7; Settlement Agreement § 9.01. The settlement administrator would also put the notice and claims forms on the Settlement Website. Settlement Agreement § 9.01. After the court granted preliminary approval, the parties conferred with Walmart and found they could not obtain the contact information for class members who bought the feed there. Stipulation (Oct. 15, 2020) at 1–2, ECF No. 59. The parties then stipulated to effect notice by publication. *Id.* The court approved the amended notice plan. Prev. Order (Jan. 15, 2021), ECF No. 66.

Simpluris, the settlement administrator, effected notice by multiple methods over several months. In July 2020, Simpluris mailed direct notice to 28 identified class members. Mot. Final Approval at 6–7. Since February 9, 2021, Simpluris has been maintaining the settlement website

3

(www. MannaProSettlement.com), which displays the long form notice, the claim form, and the other settlement related documents. Butler Decl. ¶ 11, ECF No. 68-3 ("As of April 28, 2021, the website had received 1,923 unique visitors with 13,297 visits"). Simpluris also established a toll-free number, which potential class members could call to obtain information about the settlement. Mot. Final Approval at 8. Simpluris ran a one-page ad about the settlement on March 15, 2021 and May 15, 2021 in *Domestic Rabbits* magazine. *Id*. Simpluris also utilized digital platforms to publish notices by placing two online banner ads on Facebook, Google, and targeted websites; posting the settlement information and a link to the settlement website on the Top Class Actions website; and arranging for a leader of the California Rabbit Breeders Group to post about this case on the group's Facebook page. *Id.* at 7. Simpluris also informed the Humane Society, Petfinder.com, Petfinder Foundation, Friends of Rabbits, Los Angeles Rabbit Foundation and "leaders of 60 different rabbit breeder clubs in California, requesting them to share the class settlement website with members." *Id*.

Based on the changes to the proposed notice, the court directed the parties to address how any unclaimed residual funds would be distributed, Prev. Order (Nov. 3, 2020), ECF No. 60, and the parties stipulated to *cy pres* distribution to Public Justice. Response, ECF No. 63. The court approved the notice by publication and directed the parties to provide additional support before the final approval hearing. Prev. Order (Jan. 15, 2021) at 3.

Plaintiff now moves unopposed for final approval of the class settlement, ECF No. 68, and attorneys' fees, ECF. No. 67. When plaintiff filed the motion in April 2021, only 74 class members had submitted valid claims. Mot. Final Approval at 8. The estimated individual payment was approximately $844.59. *Id*. at 9. After the website Top Class Actions published an article about this action, however, the number of claims drastically increased, with 3,891 submitted by May 21, 2021. Suppl. Friedman Decl. ¶ 4, ECF No. 71; Pl. Suppl. Br. at 1, ECF No. 73. The court held a final approval hearing on May 28, 2021 attended by class counsel Morgan George and defendant's counsel Laura Bentele, PHV. As the new claims had not yet been verified, the court ordered plaintiff to submit supplemental briefing to identify the size of the

class. Mins. Mot. Hr'g, ECF No. 72. After extensive efforts by the settlement administrator[1] and two supplemental filings, plaintiffs represented there are a total of 471 approved claims, and each claimant will receive $132.70. Pl. Second Suppl. Br. at 1, ECF No. 75. No class members have made objections or opted out. Mot. Final Approval at 9.

## II.     LEGAL STANDARD

A class action may be settled only with the court's approval. Fed. R. Civ. P. 23(e). When, as here, a settlement agreement would bind absent class members, "the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:"

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed R. Civ. P. 23(e)(2).

Before these provisions were adopted into Rule 23(e), the Ninth Circuit and other courts used similar factors to decide whether settlement agreements in class actions were "fair,

/////

/////

/////

---

[1] Simpluris removed all claims made by individuals outside the class, claims made after the claim deadline, and claims that were duplicative. Pl. Suppl. Br. at 2. Simpluris then engaged in a deficiency notice program to evaluate the validity of all remaining claims. *Id.*

reasonable, and adequate." *See* Fed. R. Civ. P. 23(e) Advisory Committee's Notes to 2018 Amendments. Those factors remain relevant. Courts consider:

    (1) the strength of the plaintiff's case;

    (2) the risk, expense, complexity, and likely duration of further litigation;

    (3) the risk of maintaining class action status throughout the trial;

    (4) the amount offered in settlement;

    (5) the extent of discovery completed and the stage of the proceedings;

    (6) the experience and view of counsel;

    (7) the presence of a governmental participant; and

    (8) the reaction of the class members of the proposed settlement.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (line breaks added for readability) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

### III.   ANALYSIS

#### A.   Final Approval

The applicable factors favor final approval of the proposed settlement. The court finds no reason to displace its previous conclusion that class counsels' representation has been adequate. *See* Prev. Order (July 6, 2020) at 9. Similarly, the court finds no reason to reconsider its earlier conclusion that Ms. Hale performed adequately as class representative. *Id*. The court also finds no reason to reverse its prior finding that the agreement was negotiated at arms' length. *Id.* at 16–17. At the time of preliminary approval, the court assumed "a 100 percent claim rate by the 1,583 class members, [and] the recovery per claimant [was] approximately $39," a recovery the court considered to be adequate given the product's retail value and "as originally contemplated against the settlement value." *Id.* at 18. Given that the 471 verified class members will receive a more generous $132.70 each, the court maintains its finding on this record that the settlement amount is adequate relief for the class. *Id.* at 17–18. That no class member has objected or opted out bolsters the court's conclusions. Butler Decl. ¶¶ 21–22.

/////

### 1. Predominance

In granting preliminary approval, the court directed the parties to provide "greater detail on the question of predominance at the final approval stage." Prev. Order (July 6, 2020) at 11. The predominance analysis under Federal Rule of Civil Procedure 23(b)(3) "asks whether the common . . . issues in the case are more prevalent or important than the . . . individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation, internal quotation marks omitted). "'Considering whether questions of law or fact common to class members predominate begins . . . with the elements of the underlying cause of action.'" *Robinson v. OnStar, LLC*, No. 15-1731, 2020 WL 364221, at *16 (S.D. Cal. Jan. 22, 2020) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). "The requirement is satisfied if a plaintiff establishes that a 'common nucleus of facts and potential legal remedies dominates the litigation.'" *Kutzman v. Derrel's Mini Storage, Inc.*, No. 18-00755, 2020 WL 406768, at *7 (E.D. Cal. Jan. 24, 2020) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)).

In an attempt to establish predominance at the preliminary approval stage, plaintiff stated "[h]ere the central inquiry . . . is whether [d]efendant violated the CLRA, UCL, FAL by falsely advertising that Class Products were 'corn free' when, as [p]laintiff alleges, the products did contain corn." Mot. for Prelim. Approval at 19. Plaintiff asserted this framing of the core questions justified a predominance finding because it "'present[ed] a significant aspect of the case . . . [that] can be resolved for all members of the class in a single adjudication.'" *Id.* (quoting *Hanlon*, 150 F.3d at 1022). The court finds that predominance is in fact satisfied based on the allegations under the UCL and FAL and the "[t]he evidence in the case show[ing] that class members were exposed to similar packaging," which said the feed mix did not contain corn. Pl. Suppl. Br. at 4, ECF No. 70; *see United States ex rel. Terry v. Wasatch Advantage Grp., LLC*, 327 F.R.D. 395, 417 (E.D. Cal. 2018); citing *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012).

### 2. Class Notice

As outlined above, class counsel and Simpluris sent direct notices to known class members and paid an outside company to manage a multi-media publication effort that included

1 print ads, social media posts and website banners to ensure notice was provided to class members.
2 Plaintiff argues the amended notice plan complied with Rule 23 and due process. Mot. Final
3 Approval at 20–22. Upon settlement of claims of a certified class, "[t]he court must direct notice
4 in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ.
5 P. 23(e)(1)(B). Rule 23(c)(2) requires the "best notice that is practicable under the circumstances,
6 including individual notice" of particular information. *See* Fed. R. Civ. P. 23(c)(2)(B)
7 (enumerating notice requirements for classes certified under Rule 23(b)(3)). "Notice is satisfactory
8 if it generally describes the terms of the settlement in sufficient detail to alert those with adverse
9 viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*,
10 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks omitted)

11 When direct notice to class members cannot be made, courts have blessed efforts to effect
12 notice by publication using print ads and the internet. *See Hilsley v. Ocean Spray Cranberries,*
13 *Inc.*, No. 17-2335, 2019 WL 718807, at *3 (S.D. Cal. Feb. 5, 2019) (finding "publication notice
14 through the print publication and through the internet, Facebook ads and a banner on
15 [defendant]'s website, will satisfy due process and Rule 23"). Here extensive and constructively
16 creative efforts were employed to reach a relatively small class. *Allagas v. BP Solar Int'l, Inc.*,
17 No. 14-560, 2016 WL 9137636, at *2 (N.D. Cal. Sept. 2, 2016) (approving use of mail and email
18 service to known class members, a settlement website, a toll-free telephone line, internet and social
19 media advertisements, and published notice in numerous periodicals as "reasonably calculated
20 under the circumstances to apprise the Class Members of the . . . action"). The court finds the
21 notice here satisfies due process and Rule 23.

22      **3.**   ***Cy pres* Distribution**

23 The parties have identified the Public Justice Foundation as the recipient for *cy pres* distribution of
24 any unclaimed funds. *See generally* Prev. Order (Jan. 15, 2021). A *cy pres* distribution of
25 unclaimed funds can be made to indirectly benefit the entire class if the distribution is "'the next
26 best distribution' to giving the funds directly to the class members." *Dennis v. Kellogg Co.*,
27 697 F.3d 858, 865 (9th Cir. 2012); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301,
28 1305 (9th Cir. 1990). "[T]he *cy pres* remedy must account for the

nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members. . . ." *Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012) (internal quotations, citation omitted).  A court abuses its discretion if it approves a *cy pres* distribution where there is "no reasonable certainty" that any class member would benefit as a result. *Dennis*, 697 F.3d at 865 (quoting *Six Mexican Workers*, 904 F.2d at 1308).

Here, the *cy pres* distribution accounts for the nature of the case, as plaintiff brought allegations under California's UCL and FAL on behalf of a class of California consumers.  Public Justice will use any funds it receives to "to further the underlying goals of this case," by "help[ing] advance the rights of California consumers under [ ] consumer protection laws."  Mot. Final Approval at 5; Bland Decl. ¶¶ 2, 5, 7, ECF No 68-2.  Specifically, Public Justice will only use the funds to further the "protection of consumers from false labeling, mislabeling or false advertising claims."  Bland Decl. ¶ 3.

The award also satisfies "the objectives of the underlying statute[s]." *Six Mexican Workers*, 904 F.2d at 1307.  California's FAL and UCL "are meant to preserve fair competition and protect consumers from unfair market distortions." *Maxin v. RHG & Co., Inc.*, No. 16-2625, 2019 WL 4295325, at *2–3 (S.D. Cal. June 24, 2019) (citing *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 331 (2011)).  Public Justice has litigated consumer protection cases in California and on behalf of California residents in deception cases, in order to vindicate their rights under the same state laws on which plaintiff relies.  Bland Decl. ¶¶ 6–7, 14.

There also is "a direct and substantial nexus" between the interests of silent class members and Public Justice Foundation. *See Lane*, 696 F.3d at 821.  The silent class members here would be purchasers of the feed with the allegedly misleading label.  As the designated *cy pres* recipient, Public Justice's goal is to "directly and indirectly benefit[ ] the class members and similarly situated persons . . . [and] advance the rights of California consumers under its consumer protection laws."  Bland Decl. ¶ 2.

Accordingly, the court finds the *cy pres* distribution of any unclaimed funds to Public Justice is appropriate.  The court thus turns to the proposed incentive award, attorneys' fee award, and proposed reimbursement of litigation costs and administrative fees.

**B.      Attorneys' Fees and Incentive Award**

The parties have agreed the defendant will separately pay attorneys' fees and costs up to $125,000, administration costs of $30,000 and 50 percent of any cost incurred above $30,000, and a $7,500 incentive award to Ms. Hale. Mem. Att'ys Fees at 2. In granting preliminary approval the court directed counsel to submit substantial justification for the attorneys' fees and the incentive award. Prev. Order (July 6, 2020) at 20–22. It observed the proposed attorneys' fees award appeared "particularly problematic," because the anticipated amount of $125,000 "is double the value of the $62,500 settlement fund." *Id*. at 20–21.

**1.      Attorneys' Fees and Costs**

"The court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Even if the parties have agreed to the amount, the court must still ensure the award is reasonable. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The Ninth Circuit has set the benchmark for attorney's fees at 25 percent of the maximum settlement amount. *See In re Easysaver Rewards Litig.*, 906 F.3d 747, 754 (9th Cir. 2018). "[C]ourts may adjust this figure upwards or downwards if the record shows special circumstances justifying a departure." *Ontiveros v. Zamora*, 303 F.R.D. 356, 372 (E.D. Cal. 2014) (internal quotation marks omitted) (citing *In re Bluetooth*, 654 F.3d at 942). Awards above the benchmark may be appropriate "when counsel achieves exceptional results for the class, undertakes extremely risky litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis." *Seguin v. County of Tulare*, 16-01262, 2018 WL 1919823, at *6 (E.D. Cal. Apr. 24, 2018) (quotation marks omitted) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)). The court may conduct a lodestar cross-check to evaluate whether the percentage recovery from a common fund is reasonable. *Vizcaino*, 290 F.3d at 1048–50.

Class counsel confirms it seeks $125,000, explaining this number is inclusive of the attorneys' fees and costs for litigation and administration, with the latter calculated as approximately $17,000 at the time the motion was filed. Mem. Att'ys' Fees at 5; *see* Friedman Decl. ¶ 22, ECF No. 67-2 (showing total $16,715 in fees and costs incurred). The late influx of

1  claims, however, greatly increased the administration costs.  Pl. Suppl. Br. at 2.  Class counsel
2  and defendant's counsel split the additional cost equally, meaning the total costs of
3  administration borne by class counsel was $25,737.74.  *Id.*  Class counsel also seeks
4  reimbursement for the costs for filing and serving documents, travel, and payment of mediation
5  and administration fees.  Friedman Decl. ¶ 22, ECF No. 67-2.  Overall, the amounts requested are
6  reasonable and consistent with the costs and fees for which courts typically approve
7  reimbursement in similar cases.  *See Fontes v. Heritage Operating, L.P.*, No. 14-1413, 2016 WL
8  1465158, at *6 (S.D. Cal. Apr. 14, 2016) (approving costs for "court filing fees, research costs,
9  mediation-related expenses, attorney services costs, and travel expenses"); *Barbosa v. Cargill*
10 *Meat Sols. Corp.*, 297 F.R.D. 431, 454 (E.D. Cal. 2013) ("[C]osts incurred, which include travel,
11 mediation fees, photocopying, private investigator to locate missing Class Members, and delivery
12 and mail charges. . . are routinely reimbursed." (citing *Vasquez v. Coast Valley Roofing, Inc.*,
13 266 F.R.D. 482, 493 (E.D. Cal. 2010))).  The court approves the request for these costs.
14         After costs and fees, class counsel is seeking approximately $100,000 in attorneys' fees
15 alone.  The court conducts a lodestar analysis to determine the reasonableness of the fees.  In so
16 doing, the court "must start by determining how many hours were reasonably expended on the
17 litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill
18 required to perform the litigation."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir.
19 2008) (citation omitted).  "This amount may be increased or decreased by a multiplier that
20 reflects any factors not subsumed within the calculation, such as 'the quality of representation, the
21 benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of
22 nonpayment.'"  *Wilson v. Metals USA, Inc.*, No. 12-568, 2021 WL 516585, at *8 (E.D. Cal. Feb.
23 11, 2021) (quoting *In re Bluetooth*, 654 F.3d at 941–42) (citation omitted).  "Foremost among
24 these considerations, however, is the benefit obtained for the class."  *In re Bluetooth*,
25 654 F.3d at 942.
26 /////
27 /////
28 /////

Class counsel calculates the lodestar amount as $170,871.25 with the following hours and rates breakdown:

| Attorney | Years Admitted | Hours | Rate | Total |
|---|---|---|---|---|
| Todd M. Friedman | 2001 | 55.95 | $750 | $41,962.50 |
| Adrian R. Bacon | 2011 | 55.1 | $650 | $35,815.00 |
| Meghan E. George | 2010 | 148.95 | $625 | $93,093.75 |

Mem. Att'ys' Fees 14; Friedman Decl.¶¶ 1, 26, 32, 35, ECF No. 67-2. As reported, class counsel spent a total of 260 hours working on this litigation over the last four years. Mem. Att'ys' Fees 4; Friedman Decl. Ex. A, ECF No. 67-2. Upon close review, the court finds the number of hours counsel spent on the case reasonable given the filing date in 2018, and the need to respond to a motion to dismiss, amend the complaint twice, engage in a full day of mediation, and make several filings in order to obtain preliminary and now final approval.

To determine whether an attorney's hourly rate is reasonable, a court may refer to "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community" and rates paid in other cases. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "The reasonable hourly rate is the rate prevailing in the community for similar work." *Arias v. Ford Motor Co.*, No. 18-1928, 2020 WL 1940843, at *3 (C.D. Cal. Jan. 27, 2020) (citing, *inter alia*, *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1200 (9th Cir. 2013)). "The relevant community is the community in which the court sits." *Id*. (citing *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 906 (9th Cir. 1995)). "If an applicant fails to meet its burden, the court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community." *Arias*, 2020 WL 1940843, at *3 (citations omitted). "[P]revailing rates in the Eastern District of California are in the $400 range, with rates of up to $650 to $675 approved for partners and senior associates with significant years of experience." *Franco v. Ruiz Food Products, Inc.*, 10-02354, 2012 WL 5941801, at *20 (E.D. Cal. Nov. 27, 2012); *see Smothers v. NorthStar Alarm Services LLC*, No. 17-00548, 2020 WL 1532058, at *9 (E.D. Cal. Mar. 31, 2020) (applying $695 per hour to lodestar calculation for attorney with 30 years' experience). Based on the prevailing rates in this

community, the court reduces the rate for Mr. Friedman for lodestar purposes from $750 to $695. *See Milburn v. PetSmart, Inc.*, No. 18-535, 2019 WL 5566313, at *9 (E.D. Cal. Oct. 29, 2019) (reducing attorney's $700 hourly rate to $695 per hour as "the upper range of hourly rates previously found to be reasonable in this district."). The court also reduces the rates of both Bacon and George to $495 per hour. *Smothers*, 2020 WL 1532058, at *9 (reducing rate of a partner with 11 years' experience from $650 per hour to $495 per hour "in light of other decisions awarding even lower rates to attorneys with much more experience in the Sacramento Division of this district").

With this adjustment, the lodestar amount is $139,890. The requested fees are below this amount, resulting in a negative multiplier. The proposed attorneys' fees thus are reasonable given the lodestar calculation, the small class, the low settlement amount, and the fact that the attorneys' fees are being paid separately from the settlement amount. Accordingly, the court approves the total request of $120,000 to cover the attorney's fees and costs.

### 2. Incentive Award

The proposed incentive award in the amount of $7,500 also will be paid separate from the settlement fund. Prev. Order (July 6, 2020) at 21; Settlement Agreement § 6.02. Ms. Hale dedicated many hours of her time to assisting in this litigation over the last few years. She has answered written discovery requests, provided documents and "information to support the notice and certification process," and participated "in the motions and settlement discussions. . . reviewing and approving the settlement." Mem. Att'ys' Fees at 24. An incentive award in the range reflected here is reasonable given Ms. Hale's contributions to the litigation. *See Greer v. Dick's Sporting Goods, Inc.*, No. 15-01063, 2020 WL 5535399, at *5 (E.D. Cal. Sept. 15, 2020); *Hopson v. Hanesbrands Inc.*, No. 08-0844, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009)). The court approves the incentive award of $7,500 to Ms. Hale.

### IV. CONCLUSION

The court **grants** the motion for final approval of the class settlement, ECF No. 68. The court **grants** the motion for attorneys' fees, ECF No. 67.

/////

This order resolves ECF Nos. 67 & 68.

IT IS SO ORDERED.

DATED: October 26, 2021.

CHIEF UNITED STATES DISTRICT JUDGE